## OKLAHOMA GAS & ELECTRIC CO. v. CORPORATION COMMISSION.

No. 12358—Opinion Filed Oct. 18, 1921.

Rehearing Denied Nov. 8, 1921.

(Syllabus.)

1. Corporation Commission — Rate-Making Powers—Temporary Schedule.

The rate-making power of the Corporation Commission is not limited to any particular theory or method and the commission may, if it has the necessary facts before it, prescribe a temporary schedule of rates to be effective until the commission has had time to make an investigation and a valuation of the property of the public utility.

2. Same—Temporary Rates for Electricity.

It is not necessary for the Corporation Commission to fix in its order a time limitation that the schedule of rates shall continue in effect, to make it a temporary or-der. This court may examine and take into consideration not only the order, but the entire record, in determining the scope, effect, limitation, or purpose of the order. On making such examination, held that the order in this case is a temporary order.

3. Same—Determination of Rates.

In fixing the rates at any particular time, the Corporation Commission may take into consideration former earnings and probable prospective earnings; former cost of operation and probable prospective cost of operation, with a view to so adjust the rate as to prevent the public utility from practicing extortion on the public and yet allow it a fair and reasonable return.

4. Same — Reduction of Rates to Conform to Reduced Operating Expense.

The legislative power of the Corporation Commission over rates is not confined to prescribing permanent rates, but may be exercised as the exigencies of the times and changing conditions demand. A reduction in the cost of operating expenses of a public utility amounting to more than $100,000 per annum creates such an exigency that the Corporation Commission may readjust and lower the rate to be charged the consumers in comparison with the reduced expenses.

Appeal from the Corporation Commission.

From order of Corporation Commission readjusting the electricity rates of the Oklahoma Gas & Electric Company, the company appeals. Affirmed.

Robert M. Rainey and Streeter B. Flynn, for appellant.

E. S. Ratliff and Asp. Snyder, Owen & Lybrand, for appellee and consumers.

MILLER, J. This proceeding was instituted by the Corporation Commission against the Oklahoma Gas & Electric Company by notifying them that the rate to be charged by them for electricity used for lighting, heat, and power would be reduced because of the reduction in the cost of fuel, which is one of the large items of expense in producing electricity for commercial purposes. They appeared before the Corporation Commission and a hearing was had extending from May 23rd, to and including May 25, 1921. The Corporation Commission made what it designated as a temporary order, No. 1880, readjusting the rates. From the order so made by the Corporation Commission, the Oklahoma Gas & Electric Company appeals and appears here as appellant. The questions presented by appellant in this appeal are:

"1st. Order No. 1880 of the Corporation Commission reducing the electric light and power rates in Oklahoma City, Norman, and Moore (although denominated a temporary

order), is in fact a permanent order so far as rate order may be, which the commission was not authorized to make, for the reason that said commission did not make a valuation of appellant's property, used and useful in its business, which was essential to the fixing of a permanent rate.

"2nd. Although the commission did not make a valuation of appellant's property, used and useful in its business, the rate fixed by the commission does not give a fair and adequate return to appellant upon the valuation of its property, used and useful in its business in supplying electric current and power, as shown by the evidence offered by it in this proceeding, and the rate fixed is therefore noncompensatory and amounts to a taking of defendant's property without due process of law, in violation of the Fourteenth Amendment to the Constitution of the United States.

"3rd. If appellant is mistaken in considering said order No. 1880 as a permanent rate order, so far as a rate order may be, and the court is of the opinion that it is only a temporary order, the same is based upon an erroneous theory, for, although the commission finds that the electric current and power rates were raised when the cost of fuel advanced (and the reduction is made on the theory that they should therefore be reduced when the cost of fuel is diminished), there is not any evidence in the record showing that the rates were increased when the cost of fuel increased."

The order No. 1880 of the Corporation Commission complained of reads as follows:

"On May 7th, 1921, the Corporation Commission issued the following notice in the form of a letter to the Oklahoma Gas & Electric Company, a public utility manufacturing and distributing electric current in the cities and towns of Moore, Norman, and Oklahoma City, which includes Putnam City, Bethany, Stock Yards and Britton:

" 'As fuel and other productions costs advanced it was the policy of the commission to protect the public utilities of the state by adjusting rates upward to cover the increased cost. Now that fuel (and other) costs are declining, it becomes the duty of the commission to be equally prompt in readjusting rates downward for the protection of the public.

" 'Considering the very substantial reduction in fuel costs now effective, also the fact that the net returns to your company under the higher production costs prevailing during the past year were ample, you are hereby instructed to make effective June 1st, next, a lighting rate of 10c per kwh for the first 50 kwh of monthly use, in lieu of the 12c now in effect; 9c per kwh for the next 100 kwh, this in lieu of the two steps, 50 at 10c and 50 at 9c, as now in effect; remain-

der of lighting schedule to remain as at present until further ordered.

" 'You are also instructed to make the power rate 6c per kwh for the first 200 kwh of monthly consumption; remainder of the power schedule to remain as at present until further ordered.

" 'These rates can either be made effective June 1st or you can answer in court room of the Corporation Commission at ten o'clock a. m., Monday, May 23rd, and show why such rates are not just and equitable at this time.'

"No notice or other indication having been received from the company that the rates suggested would be made effective without a hearing, on the 13th day of May, 1921, the commission gave formal notice that a hearing would be held in the commission's court room in the Capitol at Oklahoma City on the 23rd day of May, 1921, upon the question of the reduction of the rate to be charged by the company as indicated in the letter set forth above.

"On the 23rd of May, 1921, respondent company appeared through its attorneys and other representatives before the commission at the hour of ten o'clock a. m. and the hearing was proceeded with. Testimony upon the part of the commission was by Mr. Grimes, the commission's auditor, and is shown in exhibits from 1 to 9 inclusive, of the record in the case.

"Exhibit 1 shows an increase of revenue for the year 1920 over the year 1919, of $267,064.29, or, in percentage figures, 26.65 per cent., while for the same years there was an increase in operating expenses of $113,512.28, or 18.11 per cent. expressed in percentage; these figures being taken from reports on file with the Corporation Commission.

"Exhibit 2 is a comparative statement of revenues and expenses for the months of January, February, and March, 1921, as compared with the same months for 1920, and discloses an increase in revenues of 21.86 per cent. with an increase of operating expenses of 18.11 per cent.

"Testimony further discloses that during these three months there was charged to general expenses the sum of $61,032.81 for the year 1921, while for the first three months of the year 1920 the same item amounted to only $42,967.11. This difference the company has failed to properly account for.

"Testimony of Mr. Strait, engineer and accountant for respondent, shows an undisputed reduction in fuel costs of $115,575.35. Mr. Strait also testified that the reduction of return to the company by reason of the proposed decrease in rate as indicated by the notice of May 7th and May 13th, will amount to $108,592.38.

"At the hearing the exhibits and testimony adduced upon the part of respondent, applied to and covered the towns of Moore and Norman, Oklahoma, as well as to the city of Oklahoma City; these two towns being supplied with current produced and generated from the power plant in Oklahoma City, and it is agreed that the same proportionate decrease as applied in Oklahoma City should also apply to these towns.

"This commission on the 19th day of March, 1919, put into effect a reduction of 1 cent per kw hour from the rate in effect at that time, for the reason that expected increases in fuel costs at the time of the making of the order had not materialized. This reduction was agreed to by the company.

"It has been the policy of this commission during war times and during the times of constantly increasing fuel costs, to properly adjust the rates for utilities engaged in the production and distribution of electricity so as to keep fuel costs and the rate as near as possible on the same level. It now becomes its duty when fuel costs are shown to have decreased and the costs of production per kw hour of electric energy has substantially decreased, to be equally prompt in readjusting the rates in conformity to such decrease.

"The commission therefore finds from the testimony in this case that the proposed reduction will result in a reduction of revenue to the respondent company of $108,592.38 annually; that the reduced costs of fuel for respondent has resulted in a decrease of operating expenses which will amount to the sum of $115,575.35 annually; that this still leaves a balance of $6,985.97 per annum in favor of the company as a return over the showing for 1920, to say nothing of the unexplained increase of the general expense item for the months of January, February and March, 1921, as shown by the reports and records of the company.

"It is therefore the order of the commission, premises considered, that the respondent, Oklahoma Gas & Electric Company, on and after June first, 1921, be and it is hereby ordered to make effective the following schedule of rates:

#### Oklahoma City.

Domestic Rates:

| First | 50 | kw hour per month | 10c per kw hour. |
|---|---|---|---|
| Next | 100 | ' ' ' ' | 9c ' ' ' |
| ' | 150 | ' ' ' ' | 8c ' ' ' |
| ' | 200 | ' ' ' ' | 7c ' ' ' |
| ' | 1000 | ' ' ' ' | 6c ' ' ' |
| ' | 1500 | ' ' ' ' | 5c ' ' ' |
| ' | 1500 | ' ' ' ' | 4½c' ' ' |
| Excess | | ' ' ' ' | 3c ' ' ' |

Discount 10 per cent for payment of bills within 10 days from date thereof.
Minimum Bill, $1,00 net per meter per month.

Power Rates:

| First | 200 | kw hour per month | 6c per kw hour. |
|---|---|---|---|
| Next | 300 | ' ' ' ' | 5c ' ' ' |
| ' | 500 | ' ' ' ' | 4½c' ' ' |
| ' | 1500 | ' ' ' ' | 4c ' ' ' |
| ' | 2500 | ' ' ' ' | 3½c' ' ' |
| Excess | | ' ' ' ' | 2.75c ' ' ' |

Discount 10 per cent for payment within 10 days from date of rendering bill.

#### Norman.

Domestic Rates:

| First | 50 | kw hour per month | 11c per kw hour. |
|---|---|---|---|
| Next | 50 | ' ' ' ' | 10c ' ' ' |
| ' | 100 | ' ' ' ' | 9c ' ' ' |
| ' | 100 | ' ' ' ' | 8c ' ' ' |
| ' | 200 | ' ' ' ' | 7c ' ' ' |
| ' | 500 | ' ' ' ' | 6c ' ' ' |
| ' | 1000 | ' ' ' ' | 5c ' ' ' |
| Excess | | ' ' ' ' | 4c ' ' ' |

Discount of 10 per cent for payment within 10 days from date of rendering bill.
Minimum Bill, $1.00 net per meter per month.

#### Moore.

Domestic Rates:

| First | 100 | kw hour per month | 12c per kw hour. |
|---|---|---|---|
| Next | 100 | ' ' ' ' | 11c ' ' ' |
| ' | 300 | ' ' ' ' | 9c ' ' ' |
| ' | 500 | ' ' ' ' | 7c ' ' ' |
| Excess | | ' ' ' ' | 6c ' ' ' |

Discount of 10 per cent for payment within 10 days from date of rendering bill.
Minimum Bill, $1.00 net per meter per month.

"This order to be in full force and effect on and after June 1, 1921, and until the further order of this commission.

"Done at Oklahoma City this 25th day of May, 1921."

We think the record in this case sustains the order of the Corporation Commission. It is clear that this rate is merely a readjustment of rates based on the decreased cost of the fuel. Mr. Strait, who is engineer and accountant for the appellant, testified that the reduction in fuel costs would amount to $115,575.35, and the reduction of return to the company by the proposed decrease in rate would amount to $108,592.38.

The appellant cites the case of Oklahoma City et al. v. Corporation Commission, 80 Okla. 194, 195 Pac. 498, which holds that the order made in that proceeding was not a rate-making order, and seeks to deduce from the opinion that the Corporation Commission cannot make an order changing a rate until it has first made a valuation of the property used and useful by such public utility. The appellant further asks this court to hold that the Corporation Commission cannot change a rate already in operation without making a valuation of the property of such public utility. Appellant relies on paragraph 6 of the syllabus, which reads:

"In determining what is a fair and reasonable rate, it is essential that the Corporation Commission determine the value of the property of the public utility used and useful in serving the people."

The real question before the court in that case is disclosed in paragraph 8 of the syllabus, which states:

"The Corporation Commission has no authority to make an order requiring the consumers of gas to pay an additional sum over and above a fixed rate, for the purpose of creating a special fund, called a patrons' fund, which may be used in the future by the public service corporation with the consent and agreement of the Corporation Commission to build additional lines and compressor stations. The commission having no authority to make said order, the same is void, and prohibition will lie to enjoin the enforcement thereof."

In City of Bartlesville v. Corporation Commission, 82 Okla. 160, 199 Pac. 396, this court said:

"The rate-making power of the commission is not limited to any particular theory or method, and the commission may, if it has the necessary facts before it, prescribe a temporary schedule of rates to be effective until the commission has had time to make an investigation and a valuation of the property of the public utility."

In Muskogee Gas & Electric Co. v. State, 81 Okla. 176, 186 Pac. 730, this court says:

"The Corporation Commission was created and endowed with legislative, executive, administrative, and judicial powers. The power to fix rates is legislative, whether exercised by the Legislature directly or by an administrative body under delegated authority. The legislative power of the Corporation Commission over rates is not confined to prescribing permanent rates, but may be exercised as the exigencies of the times and changing conditions demand, and the Corporation Commission has authority to prescribe temporary rates when the necessity therefor is apparent. The rate-making power of the Corporation Commission is not limited to any particular theory or method; and the commission may, if it has the necessary facts before it, prescribe a temporary schedule of rates to be effective until the commission has had time to make an investigation and a valuation of the property of the public utility. The power of the Corporation Commission to prescribe rates is not limited to complaints filed, but is inherent in the authority delegated to the commission, and the only question of notice that can be raised by a public utility is that prescribed for notice and hearing for the utility itself."

Higgins, J., speaking for the court in the above case, says:

"Appellant contends that said order is invalid for the reason that it is temporary and experimental, and was put into effect only until such time as the commission could secure data upon which to make a valuation of the property of the company and a permanent schedule of rates. * * * * The first contention strikes at the very foundation of the fundamental law creating the commission and defining its duties, and, if sustained, must work a result quite as surprising and disastrous to the appellant as to the patrons of the company and the general public, for, if the commission were limited to prescribing rates to instances where it had made a complete inventory and valuation, there could be little or no relief from rapidly fluctuating prices brought about by war conditions and incident to the reconstruction period. This contention of the appellant fails to take into consideration the purpose for which the commission was created and the powers conferred upon it through the Constitution and the laws enacted by the Legislature. The Corporation Commission was created and endowed with legislative, executive, administrative, and judicial powers. St. L. & S. F. Ry. Co. v. Williams et al., 25 Okla. 662, 665, 107 Pac. 428, 430; Okla. Gin Co. v. State, 63 Okla. 10, 158 Pac. 629, 631.

In Ft. S. & W. Ry. Co. v. State, 25 Okla. 866, 108 Pac. 407, this court said:

" 'The power lodged in the commission to promulgate rates is a legislative power, and its exercise by the commission involves legislative discretion and policy. Any rule that would require the commission, before it promulgates any order fixing a rate, to have before it evidence that would establish to a mathematical certainty the reasonableness of the proposed rate, would greatly hinder, if not almost entirely prevent, the commission from exercising that power.' "

In Omaha & C. B. St. Ry. Co. v. Nebraska State Railway Commission, 173 N. W. 690, the Supreme Court of Nebraska said:

"Under the Constitution and laws of this state, the commission has a wide discretion in these matters. Even though present financial conditions, prices, and wages (showing almost unprecedented changes), together with the financial condition of the plaintiff company, do not show a situation which would be technically denominated an emergency, yet, if they do show a situation which makes it altogether probable that the past and present rate is insufficient to yield a revenue which will pay that fair average return which the law supposes, the commission is empowered and it may be its duty, to perm' a temporary rate, limited to the time required for making an investigation and finding of the value of the property. If it should happen that the temporary rate so fixed is too high, the condition can be rectified in the order fixing the rate after investigation. The purpose of the law being to allow those who voluntarily furnish the necessary capital to install and operate such public utilities a fair average return upon the the value of the property so devoted to the public use, and to prevent unreasonable profits, in fixing the rate at any particular time, former earnings and probable prospective earnings should always be considered, with a view to so adjust the rate as to prevent extortion and allow such fair average return."

The appellant has cited this case, laying stress on the following lines:

"To permit a temporary rate, limited to the time required for making an investigation and finding of the value of the property."

It contends, because the order of the Corporation Commission does not specify this limitation, that it is not a temporary rate. We do not think this court is limited to this narrow view in construing the order of the Corporation Commission. This court may take into consideration the entire record in determining the scope, effect, limitations, or purpose of the record. The record in this case discloses there is a proceeding pending before the Corporation Commission to make a valuation of the appellant's property used and useful in the production of electricity for light, heat, and power and determine the cost of producing the same and fix a rate to be charged therefor. It is true that all orders of the Corporation Commission are more or less temporary. It is manifest from the record that the order in this proceeding is only intended to govern until a complete adjustment of rates can be had. Therefore, we think, this order is properly designated "Temporary Order."

The appellant next contends that the Corporation Commission did not make a valuation of the property, and the rate fixed does not give a fair and adequate return to the appellant. The rate charged by the appellant prior to the time order No. 1880 was to go into effect had been fixed and assented to by the Corporation Commission and the appellant. It had been operating under it, therefore the constitutional presumption that the rate is just, reasonable, and correct would apply. If the rate it was already operating under was just, reasonable, and correct, and the expense of the company was reduced approximately $10,000 per month, we know of no good reason why the Corporation Commission should not readjust the rates to be charged so as to reduce the income in accordance with the reduction in the expense. It would necessarily follow that if the expenses were reduced $115,000 and the income reduced $108,000, this would not lessen the return to the appellant upon the valuation of its property. In Omaha & C. B. St. Ry. Co. v. Nebraska State Railway Commission, supra, the court said:

"In fixing the rate at any particular time, former earnings and probable prospective earnings should always be considered, with a view to so adjust the rate as to prevent extortion and allow such fair average return."

In answering appellant's third contention it is not necessary to prove that there was any increase in the price of fuel, or if such increase did occur, that the rate for electricity was increased.

The order makes reference to the testimony of Mr. Grimes and his Exhibits 1 to 9, inclusive. Grimes' Exhibit 1 shows this company's total revenue for the year ending December 31, 1919, was $1,002,226.96, with operating expenses during the same time amounting to $626,632.21. The same exhibit shows its total revenue for the year ending December 31, 1920, was $1,269,291.25, with operating expenses for that year amounting to $740,144.49. This would indicate that an increase in rates for electricity had been made by the company. However, it was selling electricity in 1919 at a rate agreed upon by it and the Corporation Commission. In 1920 it had a net income of $153,552.01 more than its net income for the preceding year. If permitted to charge the same rate during the year 1921, with the decrease in cost of operation caused by the fuel item alone, its net income in 1921 would be $115,575.35 greater than its net income in 1920, and $269,127.36 more than its net income for 1919.

The presumption obtains that the rate in existence before order No. 1880 was made is just, reasonable, and correct; therefore a material reduction in the operating cost should be met with a reduction in the rate charged for the electricity.

We have studiously avoided any comments about the proffered valuation of the property of appellant and the net return, as that matter has not been disposed of by the Corporation Commission and it appears from this record to be still pending before it.

We think the record in this case fully sustains the prima face presumption that the order made by the Corporation Commission is just, reasonable, and correct. Therefore order No. 1880 is hereby affirmed.

HARRISON, C. J., and KANE, ELTING, and KENNAMER, JJ., concur.