WESTERN OKLAHOMA CHAPTER OF the NATIONAL ELECTRICAL CONTRACTORS ASSOCIATION; AFL–CIO of Oklahoma, and Neighborhood Council of Oklahoma City, Area Seven, Appellants,

v.

The STATE of Oklahoma, ex rel. The CORPORATION COMMISSION of The State of Oklahoma, Appellee.

No. 49981.

Supreme Court of Oklahoma.

July 22, 1980.

As Corrected July 23, 1980.

Rehearing Denied Sept. 15, 1980.

1144

Gary W. Gardenhire, Oklahoma City, for appellant Western Chapter of the National Electrical Contractors Association.

Finis W. Smith, Tulsa, for appellant AFL–CIO of Oklahoma.

Carl G. Stevens, Oklahoma City, for appellant Neighborhood Council of Oklahoma City, Area Seven.

F. C. Love, John W. Swinford, Clyde A. Muchmore, Oklahoma City, for appellees State Chamber of Commerce, Tulsa Chamber of Commerce, Oklahoma City Chamber of Commerce.

Everett L. Cunningham, Tulsa, for appellee Public Service Company.

John W. Harbour, Jr., H. Duane Stratton, Oklahoma City, for appellee Oklahoma Gas & Electric Company.

Charles E. Norman, Tulsa, for appellee Oklahoma State Home Builders Association.

Don Timberlake, Oklahoma City, for appellee Mobile Home Association of Oklahoma.

James M. Boring, Guymon, for appellee Southwestern Public Service Company.

George Verity, Oklahoma City, for appellee Associated Industries of Oklahoma, Inc.

OPALA, Justice:

In this single appeal under Art. IX § 20, Okl.Con.,[1] electrical contractors [contractors] seek review of two decisions by the Oklahoma Corporation Commission [Commission]. The first of these was rendered in Cause 25567 [Case I]–a rate adjustment application by Oklahoma Gas and Electric Company [OG&E], a public utility supplying electrical power–and the other in Cause 25748 [Case II]–an agency–generated application for general rule review. We do not reach the substantive issues sought to be presented because, insofar as review of the decision in Case I is concerned, the appeal was not timely brought and, with respect to the Commission's action in Case II, the issues attempted to be raised are not ripe for appellate review in the procedural posture in which the matter comes to us. In short, in neither case may this court grant corrective relief.

In October of 1975, OG&E initiated Case I by its application with the Commission for a general rate increase. On May 20 of the following year the Commission granted, in part, OG&E's application. The order terminating the proceeding contained a clause directing OG&E to halt further construction of facilities on customer–owned premises. In the very same order the Commission directed its staff to initiate a proceeding for review of the Commission's rules regulating generally the "point of delivery," i. e. the place on private premises of the customer at which electrical power is transferred from the utility to the consumer.

The staff, as directed, brought an application for the ordered rule review, thus initiating Case II. Some four days later, on May 24, 1976, OG&E filed its request in Case I to vacate–from the May 20, 1976 order--the clause which dealt with temporary halting of facility construction on private property. Without consolidating these two separate proceedings,[2] the Commission set both its staff request and that of OG&E for hearing on July 2, 1976.

After a hearing–at which motions were made and arguments heard, but no evidence was formally taken–and before intervention by any party could be effected in Case II, the Commission granted OG&E's application to vacate–from its May 20, 1976 order in Case I–the objectionable temporary freeze clause and dismissed the staff application in Case II. The Commission expressly found that its existing rules and enforcement procedures with respect to the "point of delivery" were adequate. Contractors–who were formal intervenors in the rate–increase proceeding in Case I–brought their

---

1. Art. IX § 20, Okl.Con. provides that Corporation Commission's decisions that prescribe public utility rates are appealable to this court in the same manner as actions of the district courts.

2. The pertinent Commission order states in applicable part:

". . . despite the reference to consolidation in Order No. 121513 an examination of the official records of this Commission reveals that Cause No. 25748 [Case II] and Cause No. 25567 [Case I] were never consolidated into a single Cause even though both Causes were, by separate Order, set for hearing on the same date."

appeal from the Commission's order dismissing Case II. In a later amendment to the petition–in–error, contractors sought to include for review error in the vacation of that portion of the order in Case I by which OG&E was required to halt installation of delivery systems on customer premises.

## I

■ The Commission's rate order in Case I–so far as it purported to affect delivery of OG&E's power at private premises–was not a decision that could become final and binding on the parties–litigant immediately after the expiration of statutory appeal time. In that respect and to that extent the order was but temporary in nature and hence subject to the unfettered power of the Commission to modify or vacate it at any time before the subject–matter came to be finally determined.[3] Until a permanent order is effected, there is no time limitation on the Commission's ability to change its orders in a case.[4] Although the temporary halt of construction was ordered May 20, 1976 and its vacation came more than 30 days later on July 2, 1976, there was clearly no infirmity in the effectiveness of the Commission's action.[5]

Our view that the Commission's construction-halt provision of the order in Case I was merely interlocutory is predicated on these factors: [a] The purpose of OG&E's application in Case I was to secure a rate adjustment—not to affect the "point of delivery". [b] The issue as to OG&E's conduct with respect to delivery of its power at the premises of its customers came to be interposed by intervenors–electrical contractors. [c] The Commission disposed of OG&E's application by granting in part and denying in part its rate increase request. [d] The Commission sought to address the collateral issue raised by contractors—in a clause temporarily halting all further construction pending a re–examination of the general rules on the subject–matter—in a future proceeding to be initiated by the staff. [e] The Commission order clearly indicated that the issue with respect to the customer service was not germane to the rate–increase proceeding and one more properly to be dealt with in the framework of rule review.[6] [f] By directing its staff forthwith to initiate a review inquiry with respect to the rules pertinent to contractors' complaint, the Commission no doubt intended that further facility construction by OG&E be halted for no longer than neces-

3. In *Lone Star Gas Co. v. Corporation Commission*, 170 Okl. 292, 39 P.2d 547, 550 [1935] we upheld the power of the Commission to render temporary dispositions. *Muskogee Gas & Electric Co. v. State*, 81 Okl. 176, 186 P. 730 [1920]; *City of Bartlesville v. Corporation Commission*, 82 Okl. 160, 199 P. 396 [1921]; *Oklahoma Gas & Electric Co. v. Corporation Commission*, 83 Okl. 281, 201 P. 505 [1921]; and *American Indian Oil & Gas Co. v. Geo. F. Collins & Co.*, 157 Okl. 49, 9 P.2d 438 [1932].

4. In *Lone Star Gas Co. v. Corporation Commission*, supra note 3, the case was remanded for further proceedings because the decision sought to be reviewed was in the nature of a temporary order. We observed that no final decision could be made on appeal if there was no final order below.

5. If the May 20, 1976 halt–of–construction clause had constituted final disposition of the matter, its vacation after 30 days would have been ineffectual. *Crews v. Shell Oil Company*, Okl., 406 P.2d 482, 487 [1965]; *Garrison v. State*, Okl., 420 P.2d 474, 476 [1966].

6. The Commission's first order in Case I, provides in pertinent part:

"The proposal of Intervenors * * * presents the Commission with considerable difficulty. First, such a prohibition would *constitute a service rule rather than a financial adjustment for rate making purposes. Service rules ordinarily should be and are established in general rules hearings in which all companies to be affected are allowed to participate.* Thus, all such companies are kept on an even footing regarding methods of service to their customers.

* * * * * *

However, even with these questions and problems, we must further evaluate this proposal. Therefore, from and after the date of this Order, OG&E shall not construct any facilities on private property, for any and all classifications of customers. Further, the Staff is directed to file an application for a hearing on an amended general rule concerning this subject matter." [Emphasis added]

sary to undertake a rule re–examination in a staff–generated proceeding.

The Commission's power to rescind a temporary order at any time cannot be doubted. The July 2, 1976 decision which vacates the temporary construction halt in Case I— even if appealable [7]—is not before us here because, for the reasons to be explained more fully in Part II of this opinion, it was not timely brought for review.[8]

## II

Contractors commenced their appeal in Case II by filing their petition–in–error within the statutory 30–day limit.[9] In their designation of material for review, they attempted to include portions of the record in Case I. On OG&E's objection to record expansion, we directed the Commission to determine the disputed issue. The Commission ruled that since the two cases were never consolidated and contractors' petition–in–error was by its terms confined to the decision in Case II, only the record in that case could properly be included on appeal. On January 31, 1977 contractors filed an amendment to their petition–in–error by which they sought to expand the appeal to include error in the decisions in both Case I and Case II. OG&E's motion for dismissal of the amendment remains pending.

Contractors' January 31, 1977 amendment seeking to include error in Case I was filed more than six months after July 2, 1976—the date of the decision. The statutorily–prescribed 30–day period for commencing an appeal from the Case I order had long expired. Since the order appealed from was handed down on July 2, 1976, the terminal day for a timely appeal was August 1. Every appeal to this court must comply with the time limit prescribed by 12 O.S. 1971 § 990.[10] Failure to file a timely appeal constitutes a jurisdictional defect.[11] This court is hence without power to consider the issues sought to be presented with respect to Case I order.

Contractors' reliance on Rule 1.17 [12] is misplaced. That rule allows a post–appeal amendment of a petition–in–error to include other points of law to be urged with respect to the decision properly before the court. Amendments allowable by that rule are restricted to the decision from which the appeal is taken.[13] Contractors' attempted inclusion of issues pertaining to a separate decision is an expansion clearly beyond the contemplation of Rule 1.17. "A court rule may not contravene any statute which is compatible with the constitution." [14] To allow contractors' amendment would clearly contravene 12 O.S. 1971 § 990.

---

**7.** We need not reach for consideration the character of the vacation order in Case I [lifting the restrictions against construction]. In *Atchison, T. & S. F. Ry. Co. v. State*, 28 Okl. 12, 115 P. 1101, 1102 [1911] we stated that an order imposing penalties on ticketless passengers was administrative in character. Its repeal by another Commission order was also deemed an exercise of the Commission's administrative power from which there is no appeal to this court. In *Atchison T. & S. F. Ry. Co. v. State*, 28 Okl. 797, 115 P. 872 [1911] we said that Art. IX § 18, Okl.Con., conferring original jurisdiction on the Commission, is broader in scope than Art. IX § 20, Okl.Con. which provides for appeal to this court. It follows that an appeal does not lie from all actions in cases over which the Commission has jurisdiction.

**8.** This is so because the vacation of the construction freeze was effected on July 2, 1976 and the amendment to the petition-in-error seeking to include review of this order was not made here until January 31, 1977.

**9.** Art IX § 20, Okl.Con.; 12 O.S. 1971 § 990; Rule 1.86(b), Rules on Perfecting a Civil Appeal, 12 O.S.Supp. 1979, Ch. 15, App. 2.

**10.** *Transok Pipe Line Company v. Darks*, Okl., 515 P.2d 218, 219 [1973].

**11.** 12 O. S. 1971 §§ 990, 992. See also *Burk v. Burk*, Okl., 516 P.2d 268 [1973].

**12.** Rules on Perfecting a Civil Appeal, 12 O.S., Ch. 15, App. 2.

**13.** *Ogle v. Ogle*, Okl., 517 P.2d 797, 799 [1973].

**14.** *Ogle v. Ogle*, supra note 16, at 799.

OG&E's motion is therefore granted because Case I issues sought to be presented as part of this appeal were not timely brought here for review.[15]

### III

■ There remains for consideration the status of this appeal with respect to the order in Case II. The dispositive question is whether the dismissal of an agency–generated application for rules review may constitute an appealable order when (a) that decision, as it is the case here, does not conclude any party because it was rendered before any adversary proceeding had commenced and (b) no one had an opportunity to participate or intervene in the proceeding. We conclude that it may not.

Case II was an agency–generated proceeding for rule review.[16] *No* testimony was taken. *No* petition for intervention was filed. *No* conflicting adversary claims had been placed in issue when the agency dismissal occurred. The dismissal was anchored on the agency's finding that its existing rules and procedures adequately dealt with the "point of delivery" problem. In short, no private rights were involved, affected or *concluded.* If contractors still desire to press for a rule change, they are free to bring, at any time in the future, their own application for rule review. By rule 2(g), of the General Rules and Regulations Governing the Operations of Electric Utilities, the Commission expressly provides its rules may be amended by application of any interested party.[17] Rule 12(a) of the Commission's Rules of Practice governs procedure when a rule change is sought.[18]

This issues sought to be presented on review of the decision in Case II are not ripe for appellate disposition.[19] "Without undertaking to survey the intricacies of the ripeness doctrine *it is fair to say that its basic rationale is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties.*" [Footnote omitted and emphasis added][20]

There has been as yet *no* formalized expression of the Commission's general policy—for all power generating public utilities in the state—with respect to the change in the rules governing the "point of delivery" which contractors advocated in the proceed-

---

15. We need not decide here whether one or two appeals should have been brought to present the issues in both cases. See Rules 1.18(a) and 1.76(e), Rules on Perfecting a Civil Appeal, 12 O.S. 1971 & Supp. 1979, Ch. 15, App. 2.

16. By the terms of Art. IX § 18, Okl.Con. and 17 O.S. 1971 § 152 the Commission is given the responsibility to prescribe and monitor rules and regulations governing the service conduct of public utilities.

17. As disclosed by the record, Rule 2(g) of the General Rules and Regulations Governing the Operations of Electric Utilities provides:

"The adoption of these rules shall in no way preclude the Commission from altering or amending them in whole or in part after notice and hearing, or from allowing or requiring additional or different service, equipment, facility, or standards than prescribed by these rules, either upon complaint or application or upon its own motion. Nothing provided in these rules shall relieve any utility from any duty prescribed by the laws of the State of Oklahoma."

18. Rule 12(a) of the Commission's Rules of Practice provides:

"Notice of an application to make or prescribe, or to alter, amend or modify a general order, rule, regulation or requirement not directed against a particular party to company by name, shall be published not less than once a week for four consecutive weeks in a newspaper of general circulation in Oklahoma County. The notice shall set out the substance of the order, rule or regulation proposed. In addition, before the order, rule or regulation goes into effect, it shall be published at length for the time and in the manner above stated. (Article IX § 18 Oklahoma Constitution). This sub–section shall not apply to general orders relating to conservation of oil and gas. (52 O.S. 1961 § 86.4)."

19. *Lone Star Gas Co. v. Corporation Commission,* supra note 3.

20. *Abbott Laboratories v. Gardner,* 387 U.S. 136, 148–149, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681 [1967].

ing on OG&E's 1975 rate adjustment application.[21]

Appeal dismissed.

LAVENDER, C. J., IRWIN, V. C. J., and WILLIAMS, BARNES, DOOLIN, and HARGRAVE, JJ., concur.

HODGES and SIMMS, JJ., dissent.

---

**21.** The issue was pressed in the context of a rate adjustment proceeding where it was no doubt found nongermane and out-of-context; see supra note 6.