CONOCO, INC., a corporation, Appellee,

v.

The STATE DEPARTMENT OF HEALTH OF the STATE OF OKLAHOMA, The State Board of Health of the State of Oklahoma, Air Quality Council of the Department of Health of the State of Oklahoma, Appellants.

No. 56070.

Supreme Court of Oklahoma.

July 27, 1982.

As Corrected Aug. 5 and Aug. 19, 1982.

As Modified on Denial of Rehearing Oct. 4, 1982.

Susan M. Otto, Staff Attorney, Oklahoma Air Quality Service, Jan Eric Cartwright, Atty. Gen. of Oklahoma by John F. Percival, Asst. Atty. Gen., for appellants.

Guy Clark, Northcutt, Northcutt, Raley, Clark, Gardner, Hron & Northcutt, Ponca City, for appellee.

OPALA, Justice:

The dispositive issue in this case is whether an aggrieved party who fails to perfect a timely appeal from a final order of an administrative agency later may challenge the validity of the rule on which the order was issued by means of an action for declaratory judgment. We answer in the negative.

### I.

Conoco, Inc., appellee (plaintiff below), owns and operates a petroleum refinery in Ponca City, Oklahoma. As part of the refining process, Conoco operates a fluid catalytic cracking unit,[1] which processes a portion of the crude product through the use of an alumina-silica catalyst. This catalyst is circulated in the system and then cleaned in a regenerator unit and reused. In the regenerator unit, the carbon or carbonaceous material adhering to the catalyst is removed. The heavier particles fall out of the air stream which is then exhausted through a stack. Some of the catalyst breaks up and is released into the atmosphere; and of the particles so released, a portion of them are small enough to be inhaled by human beings.

Appellants (referred to as Agency herein)—the State Department of Health, the State Board of Health and the Air Quality Council—are charged by the provisions of the Oklahoma Clean Air Act[2] with the duty to promulgate rules and regulations for the control and abatement of air pollution and for the establishment of health and safety tolerance standards. Also incumbent upon Agency is the attainment and maintenance of nationally applicable standards for certain pollutants, including particulate matter, promulgated by the federal government under the Federal Clean Air Act.[3]

Pursuant to these duties, Agency adopted a series of regulations for the control and abatement of particulate emissions from industrial sources. Regulation 7, the basis for the present action, pertains to the control of smoke, visible emissions and particulates, and limits the density of plumes emanating from pollutant facilities. As originally adopted in 1971, Regulation 7 limited facilities to a Number 1 on the Ringelmann Scale, a system of gauging the density of black and gray plumes. Facilities which emitted plumes other than black or gray had to meet equivalent "opacity", i.e., the degree to which emissions reduce the transmission of light passing through the plume and obscure the view of an object in the background. As calibrated, Ringelmann Number 1 equals 20% opacity.

Originally, sources which failed to achieve 20% opacity could still satisfy the regulation's requirement by demonstrating that they were operating within process weight limits established by Regulation 8. These limits define permissible particulate

---

1. This unit is referred to as the Number 5 Fluid Catalytic Cracking/Regenerator Unit. For state pollution control purposes it is designated Source 802.

2. 63 O.S.1981 § 1–1801 et seq.

3. 42 U.S.C. § 7401 et seq.

emissions in terms of pounds per hour. In 1975, Agency proposed an amendment to Regulation 7 to exclude this alternative means of compliance and to make standard the requirement that sources achieve either Ringelmann 1 or 20% opacity, depending upon the color of the plume. Conoco's representative appeared at a public hearing held September 9, 1975 regarding the modification of Regulation 7 and expressed unequivocal support for the change. Subsequently, the amendment was adopted on December 6, 1975.

The amendment to Regulation 7 directly affected Conoco's facility, whose "catcracking" unit ordinarily generated emissions measuring between 25–35% opacity. Cognizant of its continuing violation, Conoco petitioned the Air Quality Council on May 23, 1979 for a variance from the requirements of Regulation 7 in order to provide time for sufficient engineering studies and construction of necessary pollution control equipment. Because of the expense involved in premature closure of the operation, Conoco requested the variance until June 1, 1983, so that control equipment could be installed during a regularly-scheduled maintenance shut-down, or "turn-around".

On July 10, 1979, the Council approved the variance but conditioned it for the one-year period permitted by law,[4] subject to Conoco's submitting an expeditious *compliance schedule within 120 days*. In addition, the Council considered Conoco's complaint concerning the necessity for the Regulation 7 standard and upheld the regulation. This action subsequently was approved by the Board of Health on September 8, 1979. No appeal from either of these decisions was taken.

On June 10, 1980, Conoco sought declaratory and injunctive relief in the trial court and challenged the "validity and applicability of Regulation 7 ... and the proposed enforcement of Regulation 7 in its application" to Conoco's catcracking unit. Agency objected to the jurisdiction and venue of the action, but these objections were overruled. After a trial to the court and a judgment in favor of Conoco, this appeal followed.

## II.

Agency is subject to the state's Administrative Procedures Act [APA].[5] That act provides for judicial review of final orders of agencies subject to its provisions. 75 O.S.1981 § 318(1).[6] "Order" is defined in the act as "all or part of the final or intermediate decision, whether affirmative, negative, injunctive or declaratory in form, by an agency in any matter other than rule making."[7] There can be no doubt that Agency's decision to grant Conoco a variance and to require eventual compliance with the requirements of Regulation 7 was a "final" decision on the matter—the administrative process was at an end and legal obligations had been imposed as a result of that process.[8] Any judicial review of that decision, therefore, was available under § 318.[9] Further review of a final judg-

---

4. See 63 O.S.1981 § 1–1802(J)(d).

5. 75 O.S.1981 §§ 301–326.

6. The terms of 75 O.S.1981 § 318(1) provide: "Any person or party aggrieved or adversely affected by a final order in an individual proceeding, whether such order is affirmative or negative in form, is entitled to certain, speedy, adequate and complete judicial review thereof under this act, but nothing in this section shall prevent resort to other means of review, redress, relief or trial de novo, available because of constitutional provisions. Neither a motion for new trial nor an application for rehearing shall be prerequisite to secure judicial review."

7. 75 O.S.1981 § 301(6).

8. See *Port of Boston Marine Terminal Ass'n. v. Rederiaktiebolaget Transatlantic,* 400 U.S. 62, 91 S.Ct. 203, 27 L.Ed.2d 203 [1970]; *Gealon v. Keala,* 60 Haw. 513, 591 P.2d 621 [1979]; *State, Dept. of Ecology v. City of Kirkland,* 84 Wash.2d 25, 523 P.2d 1181 [1974].

9. The manner for securing judicial review of a final order is described in 75 O.S.1981 § 318(2): "In all other instances [than where review is by direct proceedings to this Court], proceedings for review *shall* be instituted by filing a petition, in the district court of the county in which the party seeking review resides or at the option of such party where the property interest affected is situated, *within thirty (30) days after the appellant is notified of the order ...*". [Emphasis added].

ment of the district court may be had by way of appeal to this Court.[10]

In the instant case it is undisputed that Conoco failed to perfect such an appeal from the final decision rendered by Agency. The Air Quality Council conditionally granted Conoco's request for a variance, subject to Conoco's submitting an expeditious schedule for compliance with Regulation 7, on July 10, 1979. This action was approved by the Board of Health on September 8, 1979.[11] No petition was filed in the district court until June 10, 1980, eleven months after the decision of the Council and more than nine months after approval by the Board.

■ It is well established that the time limits within which to appeal from an adverse decision are jurisdictional in nature and that if an appeal is brought untimely the court has no power to decide the case. This rule applies to judicial review of administrative actions to the same extent as it does to court judgments and decrees.[12] We reaffirmed this principle recently in *State ex rel. Okl. Employment Security Comm'n. v. Emergency Physicians, Inc.,*[13] where we said:

"What we have before us is a petition for judicial review of an order of an administrative board. The procedural requirements are mandatory and must be complied with before a District Court can acquire jurisdiction for review. Where as here the statute requires that a proceeding to review an administrative body's decision shall be commenced within a specified period, timely filing is jurisdictional. Since the plaintiff ... did not file a timely petition in the Office of the Clerk of the District Court ... the District Court ... had no jurisdiction over the attempted suit for judicial review, and it was error for the court below not to have dismissed plaintiff's suit for that reason."

What we said there applies with equal force here. When administrative relief was finally granted, Conoco's variance came to it with the burden of having to submit a compliance schedule. Conoco accepted that burden by its failure to appeal but later sought to be relieved of compliance altogether when it brought this case. Its efforts came too late.

■ Although the terms of § 318 do not explicitly provide that they are to be the *exclusive* means of judicial review, we believe that this is implicit in the statute. Section 318(1) states that any aggrieved person "is entitled to certain, speedy, adequate and complete judicial review thereof *under this act,* but nothing in this section shall prevent resort to other means of review, redress, relief or trial de novo, available because of *constitutional provisions."*

---

10. 75 O.S.1981 § 323.

11. We note that the relevant portions of the Oklahoma Clean Air Act are unclear as to exactly which agency may render the final decision on a petition for a variance. See 63 O.S. 1981 § 1–1802(J). Subsections (b) and (c) authorize the *Air Quality Council* to "grant" variances. On the other hand, subsection (d) states that any variance "shall be granted for such a period of time, not exceeding one (1) year, *as shall be specified by the State Board of Health at the time of the grant* of the variance." [Emphasis added]. It is not clear whether this requires the Board itself to approve the variance before the decision becomes "final" or whether, for example, the Board may specify a maximum time limit which is applicable to any variance that may be granted during a specific period of time. Subsection (d) also states that "such variance may be extended from year to year by affirmative action of the Board upon recommendation of the Council." Again, it is not clear whether this requires the Board to approve *every* variance upon recommendation of the Council before the decision becomes "final", or whether this is only necessary in case of extensions but not for the original grant. Because under the circumstances of this case the result would be the same no matter how the troubling question is resolved, we need not reach it here.

12. *Western Okla. Chapter of the Nat'l. Elec. Contractors Ass'n.; AFL–CIO v. State ex rel. Corp. Comm'n,* Okl., 616 P.2d 1143 [1980]; *Edmondson v. Siegfried Insurance Agency, Inc.,* Okl., 577 P.2d 72 [1978]; *Citizens' Action for Safe Energy, Inc. v. Okla. Water Resources Bd.,* Okl.App., 598 P.2d 271 [1979]; *Kohler v. Clark,* Okl.App., 525 P.2d 1401 [1974].

13. Okl., 631 P.2d 743, 745–746 [1981].

[Emphasis added]. The Revised Model Act of 1961, upon which our statute was based, states that this section shall not limit other means of judicial review which are "provided by *law*."[14] [Emphasis added]. The earliest drafts of our act contained the same language,[15] but this wording was eliminated prior to the enactment of the statute. Thus, the Act envisions a single plan of review, which is to be exclusive of all others except those types which rest on constitutional provisions. Since a declaratory judgment proceeding is not one derived from "constitutional provisions," it may not be used in lieu of the proceedings under § 318. Moreover, in *Martin v. Harrah Independent School District*,[16] we held that:

"[W]hen the statute prescribes a particular method of review of an administrative action a litigant must seek judicial review in the manner prescribed and may not invoke the original jurisdiction of a court by an independent proceeding. An independent action is not permissible where the decision of the agency is judicially reviewable unless it fails to provide an adequate remedy or an action is brought in federal court . . ."[17]

### III.

■ Conoco contends that the action was properly brought under § 306 of the APA.[18] The argument is advanced that the APA provides several ways by which a rule may be challenged and that none of these, from the language of the Act, appears to be exclusive of the others. The issue, as we view it, is not whether any of these is exclusive, but rather *when* each may be utilized[19]—more specifically, whether an action for declaratory relief may be brought after the time for appeal from an adverse final order has expired. Conoco also suggests that § 306 is a special statute prescribing its own procedures and eliminating the general law applicable to judicial-review prerequisites when administrative rules are involved. To the extent that this argument implies that an action for declaratory judgment can be brought regardless of the requirements of § 318, we do not agree.

Section 306 is identical to corresponding portions of the original[20] and the revised[21] Model State Administrative Procedure Acts. The earliest draft[22] did not contain a

14. 1961 Revised Model State Administrative Procedure Act (hereinafter cited as RMSAP), § 15(a), 14 U.L.A. Civil Proc. 429.

15. Proposed Act on Administrative Law Procedures, § 24(1), Report of Committee on Administrative Law Procedure, 23 OBAJ 1550, 1562 [1952] and § 23(1), 25 OBAJ 1941, 1950 [1954].

16. Okl., 543 P.2d 1370 [1976].

17. *Martin v. Harrah Independent School Dist.*, supra note 16 at 1376.

18. The terms of 75 O.S.1981 § 306 provide: "The validity or applicability of a rule may be determined in an action for declaratory judgment in the district court of the county of the residence of the person seeking relief or, at the option of such person, in the county wherein the rule is sought to be applied, if it is alleged the rule, or its threatened application, interferes with or impairs, or threatens to interfere with or impair, the legal rights or privileges of the plaintiff. The agency shall be made a party to the action. A declaratory judgment may be rendered whether or not the plaintiff has requested the agency to pass upon the validity or applicability of the rule in question."

19. For example § 308(b) and (c) provide for disapproval of a rule by resolution of either house of the Legislature. But this procedure can only be utilized during the first thirty legislative days after the rule is filed with the Legislature as required by § 308(a) or, if the Legislature adjourns before the expiration of the thirty-day period, within the first thirty legislative days of the succeeding session. Again, § 303(c) provides, by implication, that a rule may be contested on the ground that it was not adopted in "substantial compliance" with the procedural requirements of § 302, and that such an action must be commenced within two years from the effective date of the rule. Although these methods are not exclusive of each other, they are limited as to when each may be used.

20. Model State Administrative Procedure Act, § 6(1), 9C U.L.A. 174, 181 [1957].

21. RMSAP, § 7, supra note 14 at 400.

22. See *Report of Committee on Uniform Act on Administrative Procedure*, Handbook of the National Conference of Commissioners on Uniform State Laws, 382–388 [1940].

provision for declaratory judgments, but later drafts did. The 1943 Committee Report [23] indicates that increasing attention was being given to the use of the declaratory judgment for securing judicial pronouncements respecting the validity of administrative rules and regulations. The draftsmen believed that the general declaratory-judgment statutes were sufficient for this purpose and presumed that those procedures would be utilized. Certain factors—including the lack of a direct reference to administrative rules in those acts [24]—apparently acted as a deterrent to such exercise of the courts' power. [25] To guarantee the

availability of the declaratory judgment to test the validity or applicability of administrative rules, it was therefore desirable to include a specific provision for it in the act. This section confirms the existence of the remedy; but there is nothing to indicate that it could be obtained in disregard of other procedural requirements.

Although we have not so expressly provided, [26] our prior cases suggest that a declaratory judgment is not available after a final order has been rendered by an agency. In *Oklahoma Tax Commission v. Smith*,[27] a taxpayer sought a declaratory judgment on

23. *Report of Committee on Tentative Draft of Uniform Act on Administrative Procedure* (hereinafter 1943 Committee Report), Handbook of the National Conference of Commissioners on Uniform State Laws, 226, 235 [1943]. A note following that section of the 1943 draft (that which corresponds to § 306) in the Committee Report at 227–228 explains why the provision was inserted:

"The declaratory judgment is not new in state judicial procedure. The Uniform Declaratory Judgments Act was adopted by the National Conference of Commissioners in 1921, and has since been passed in over half the states. That act has been found useful in the field of administrative law; but certain impediments, including the judicial requirement of an actual case or controversy and the doctrine of prior resort to administrative remedies, have developed to prevent it from having the general utility that is to be desired. For this reason it is deemed proper to include in this act a special provision for judicial determination of the validity and correctness of administrative rules."

24. Section 2 of the Uniform Declaratory Judgments Act specifically refers to "deed," "will," "written contract," "statute," "municipal ordinance," and "franchise." Section 5, however, states that this enumeration is not exclusive and "does not limit or restrict the exercise of the general powers conferred [by the Act], in any proceeding where declaratory relief is sought, in which a judgment or decree will terminate the controversy or remove an uncertainty." See 9A U.L.A. 181, 314 [1965]. Our declaratory judgment statute, 12 O.S. 1981 § 1651, lists "any foreign judgment or decree, deed, contract, trust, or other instrument or agreement" and "any statute, municipal ordinance, or other governmental regulation." Section 1657 specifically excludes "orders, judgments and decrees made by [any] administrative agency, board or commission."

25. See 1 F. Cooper, State Administrative Law 246–250 and 2 F. Cooper, State Administrative Law 636–640 [1954].

26. Only once before have we ruled that an action for declaratory judgment could not be maintained after an order had been issued by an administrative agency. In *Sanders v. Oklahoma Employment Security Comm'n*, 200 Okl. 366, 195 P.2d 272 [1948], the plaintiff commenced an action to enjoin the Commission from enforcing certain tax liens against the plaintiff for delinquent contributions assessed under the Oklahoma Employment Security Act, 40 O.S. 1941 § 211 et seq. (now 40 O.S. 1981 § 1–101 et seq.). Plaintiff in that case alleged, inter alia, that certain amendments enacted in 1943 were unconstitutional. That act specifically provided in § 224(b)(3) [now 40 O.S. 1981 § 3–302(3) ] that "No suit, including an action for declaratory judgment, shall be maintained . . . by any court of this State which has the purpose or effect of restraining, delaying, or forestalling the collection of any contributions under this Act or substituting any collection procedure for those prescribed." We affirmed the dismissal by the district court on the ground that the plaintiff had failed to pursue the administrative remedies provided by the Act before seeking relief from the courts. We also stated:

"Plaintiff apparently seeks a reversal of the order of dismissal with directions to enter a decree in the nature of a declaratory judgment as to the constitutionality of the 1943 amendment, Sec. 1, Title 40, ch. 6, p. 110, S.L. 1943. Such a proceeding is prohibited by Subdiv. (b), Subsec. (3), Sec. 224, 40 O.S. 1941." 195 P.2d at 276.

That case is of little help here because: (1) that act specifically precluded an action for declaratory relief, and (2) insofar as such an action would hinder the collection of employer contributions, declaratory relief would be unavailable regardless of whether an order had been issued.

27. Okl., 610 P.2d 794 [1980].

the constitutionality of the state income tax statute. We held that an action for declaratory relief was proper because "the taxpayer plaintiff's claim is based upon his ability to attack a statute allegedly void on constitutional grounds *prior to the issuance of an order, judgment or decree* by the commission." [28] (Emphasis added). Although that action was brought under our general declaratory judgment statute [29] rather than under § 306 of the APA, the reasoning there applies here as well.

Again, in *Associated Builders and Contractors of Oklahoma v. State ex rel. Oklahoma Department of Labor*,[30] it was contended that certain rules adopted by the Commissioner of Labor under the Minimum Wages on Public Works Act [31] were contrary to law and invalid. In affirming the trial court's judgment of dismissal, we said: [32]

"If appellants wish to challenge the validity of those rules, their proper procedure is to commence an action for declaratory judgment pursuant to 75 O.S.1971, § 306, which was not done here. Alternatively, they could have requested the repeal or amendment of the complained of rules pursuant to 75 O.S.1971, § 305, and sought an 'individual proceeding' hearing pursuant to 75 O.S.1971, § 307. If that individual proceedings' order was then adverse to them, they could then appeal it pursuant to 75 O.S.1971, § 318. As presented, the issue of the validity of the adopted rules is not properly before this Court."

Implicit in this statement is that an action for declaratory judgment may be appropriate before an order has been issued, but that afterwards the order can be appealed only by way of the provisions in § 318.

This conclusion is suggested by the legislative history of the Model Act. The Committee Report accompanying the 1943 draft stated that one of the principles incorporated in the act was a "provision for *advance* determination or 'declaratory judgments' on the validity of administrative rules." [33] [Emphasis added]. This same language regarding declaratory judgments as "advance determinations" was retained in the Prefatory Notes to both the original [34] and the 1961 Revised [35] Model Acts.[36]

■ This result also is warranted from a consideration of the nature of a declaratory judgment in general. Such relief is especially useful in a case where a justiciable controversy between the parties exists and the plaintiff would be required to do or refrain from doing some action at his legal peril.[37] It is merely a type of *remedy* which may be granted where a court already has jurisdiction over a particular cause.[38] It cannot extend the jurisdiction of a court where it would not exist otherwise; and if a court lacks jurisdiction over a case, it

**28.** *Oklahoma Tax Commission v. Smith,* supra note 27, at 802.

**29.** 12 O.S. 1981 § 1651 et seq.

**30.** Okl., 628 P.2d 1156 [1981].

**31.** 40 O.S. 1981 § 196.1 et seq.

**32.** *Associated Builders and Contractors of Okla. v. State ex rel. Okla. Dept. of Labor,* supra note 30 at 1161.

**33.** 1943 Committee Report, supra note 22 at 228.

**34.** Report of Special Committee on Model Administrative Procedure Act, Handbook of the National Conference of Commissioners on Uniform State Laws, 191, 195, 200 [1946]; 9C U.L.A. 174, 177 [1957].

**35.** 14 U.L.A.Civ.Proc. 357, 363.

**36.** This interpretation is also borne out by the late Dean Stason, then Chairman of the Special Committee on the Model State Act, who, commenting on the original version, stated: "The declaratory judgment procedure has worked well in the courts of law when *potential* controversies between private litigants are involved. There is no reason why it should not be similarly successful in administrative affairs when one party is the government." [Emphasis added]. Stason, The Model State Administrative Procedure Act, 33 Iowa L.Rev. 196, 204 [1948].

**37.** *State ex rel. Board of Examiners in Optometry v. Lawton,* Okl., 523 P.2d 1064 [1974].

**38.** *Matter of Estate of Bouse,* Okl.App., 583 P.2d 514 [1978].

cannot enter any rightful judgment.[39] Moreover, an action for declaratory judgment is not maintainable in lieu of an appeal by a party who wishes to re-examine aspects of a prior judgment or decree, by which the controversy has already been adjudicated and legal relations established.[40]

Conoco cites two cases, *Rutledge v. Oklahoma Alcoholic Beverage Control Board*[41] and *Mills v. Mills*,[42] in support of its proposition; but neither of those is helpful here. In *Rutledge*, the plaintiff sought declaratory relief under § 306 or, in the alternative, a writ of prohibition. The trial court issued, and the appeal was perfected from, a permanent writ of prohibition. No further mention or discussion was made regarding § 306, nor is there any indication that "individual proceedings" under the APA had been conducted prior to the action. In the *Mills* case, we held that the general Declaratory Judgment Act may not be used to interpret or clarify final judgments and decrees of a court of competent jurisdiction.[43]

We do not believe that § 306 was intended to allow an aggrieved party to seek a declaratory judgment after a final order has been issued and the time to appeal from that order has expired. Such an interpretation would render meaningless the thirty-day limitation in § 318(2) and result in at least two opportunities to challenge the order: the first, by way of appeal under § 318; and the second, under § 306, to attack the validity of the rule upon which the order has been based. It is true that § 306 provides that a declaratory judgment "may be rendered whether or not the plaintiff has requested the *agency* to pass upon the validity or applicability of the rule in question." [Emphasis added]. This is a limited exception to the usual requirement that a person may not seek relief from the courts until he has exhausted the ordinary administrative remedies;[44] but it does not eliminate all other procedural requisites for judicial review.[45]

We hold, therefore, that where an aggrieved party fails to perfect a timely appeal from a final administrative order, he cannot seek to challenge that order by means of an action for declaratory judgment. Because we hold that § 306 was not properly invoked here, we do not consider the other issues presented for review.

The judgment is reversed.

IRWIN, C. J., BARNES, V. C. J., and HODGES, LAVENDER, HARGRAVE and WILSON, JJ., concur.

SIMMS, J., concurs in result.

DOOLIN, J., dissents.

---

**39.** *Board of County Commissioners v. City of Norman*, Okl., 472 P.2d 910 [1970].

**40.** *Mills v. Mills*, Okl., 512 P.2d 143 [1973].

**41.** Okl., 517 P.2d 800 [1973].

**42.** Supra note 40.

**43.** After our decision in *Mills v. Mills*, supra note 40, the statute, 12 O.S. 1981 § 1651, was amended to authorize a district court suit to construe the terms, or test the validity, "of a foreign judgment or decree." See *Carpenter v. Carpenter*, Okl., 645 P.2d 476, 481 [1982].

**44.** *Marley v. Cannon*, Okl., 618 P.2d 401 [1980].

**45.** See *Union Electric Co. v. Clark*, 511 S.W.2d 822 [Mo.1974]; *State ex rel. Goldberg v. Darnold*, 604 S.W.2d 826 [Mo.App.1980]; *State ex rel. Southwestern Bell Telephone Co. v. Public Serv. Comm'n.*, 592 S.W.2d 184 [Mo.App.1979]; *American Hog Co. v. County of Clinton*, 495 S.W.2d 123 [Mo.App.1973].