FRENCH PETROLEUM
CORPORATION,
Appellant,

v.

The OKLAHOMA CORPORATION
COMMISSION and DLB Energy
Corp., Appellees.

No. 73679.

Supreme Court of Oklahoma.

Jan. 15, 1991.

Rehearing Denied Feb. 26, 1991.

Gregory L. Mahaffey, Martha Martin, Oklahoma City, for appellant French Petroleum Corp.

Lindil C. Fowler, Jr., Leslie Wilson Pepper, Lu Willis, Oklahoma City, for appellee Okl. Corp. Com'n.

William H. Huffman, Oklahoma City, for appellee DLB Energy Corp.

KAUGER, Justice.

This is an appeal from the issuance of a temporary order by the appellee, Oklahoma Corporation Commission (Corporation Commission). The temporary order restricts production from two wells operated by the appellee, DLB Energy Corp. (DLB Energy) and the appellant, French Petroleum Corporation (French), in the Harvey Steffen Unit to 1,300 MCF per day with the combined production from the two wells not to ex-

ceed the unit's annual allowable. We find that because the order issued is temporary, and because a final determination of the central issue—whether the well operated by DLB Energy, or the well operated by French is entitled to priority in the production of the unit allowable—is still before the Corporation Commission, the issues tendered are not ripe for review, and that the appeal should be dismissed.[1]

## FACTS

On August 14, 1985, the Oklahoma Corporation Commission (appellee/Corporation Commission) issued increased density order No. 283661 providing for the predecessors in interest of DLB and French to re-complete the Harvey Steffen No. 2 (DLB well) and to drill a third well, the Harvey Steffen No. 3 (French well), in the Harvey Steffen Unit (unit) to the Atoka–Morrow formation.[2] When the application was filed, Texaco was operating the unit well—the Harvey Steffen No. 1 (No. 1 well). Order No. 283661 provides that the three wells are to share a single unit allowable to be established by taking the initial potential test from the best well in the section. Under order No. 283661, the No. 1 well has priority to the unit allowable, the DLB well has second priority, and the French well is authorized to produce the remaining portion

of the allowable not produced by the other two wells. However, the order provides that the authority to drill the two additional increased density wells expires one year after the order is executed *unless the wells are commenced on or before the expiration date.*[3]

An attempt to deepen and to recomplete the DLB well began on November 25, 1985. Drilling ended on January 11, 1986. The DLB well's completion report provided that the well was dry, that the formation was too tight, and that no pipe liner was run. The DLB well was plugged by setting an iron bridge plug above the Atoka–Morrow. On December 20, 1988, after having initially denied its application, the Corporation Commission approved DLB Energy's request to reenter the DLB wellbore.[4] DLB Energy began drilling on December 21, 1988. It reentered the DLB wellbore, drilled out the cast iron bridge plug, and recompleted the well in the Atoka–Morrow. Drilling ended on January 9, 1989, and the DLB well began producing on February 22, 1989.

It is undisputed that the French well was commenced within the time frame outlined by order No. 283661. The controversy here revolves around the central issues in three related causes before the Corporation Commission [5]—whether the DLB well was com-

1. Although neither DLB Energy nor the Corporation Commission indicated that this appeal should be dismissed in their respective responses to the petition in error, both parties characterized Order No. 339603 as temporary, pending final rulings in related causes C.D. Nos. 148555, 148068, and 148369.

2. The Harvey Steffen Unit is a 640–acre unit for the Atoka–Morrow common source of supply located at Section 20, Township 13 North, Range 9 West, Canadian County, Oklahoma. No controversy surrounds the well which existed in the unit at the time the increased density order was filed—the Harvey Steffen No. 1 operated by Texaco. Both DLB and French agree that the No. 1 well, a marginal producer, is entitled to production priority of the unit allowable.

3. Order No. 283661, issued on August 14, 1985, provides in pertinent part:
    "... 9. *Allowable.* The wells producing from the Atoka–Morrow separate common source of supply underlying Section 20 should share

a single unit gas allowable to be determined by taking the initial potential test from the best well in the section. The Harvey Steffen No. 1 well would then have priority to that allowable with the Harvey Steffen No. 2 well having second priority and the Harvey Steffen No. 3 well being able to produce whatever portion of the allowable is remaining ...
11. Authority to drill the two additional increased density wells will expire twelve months after the execution date of this order unless the wells are commenced on or before the expiration date ...."
The Harvey Steffen No. 2 well referred to in Order No. 283661 is the DLB well. The Harvey Steffen No. 3 is the French well.

4. On January 5, 1989, French filed an emergency application to revoke DLB Energy's intent to drill for the DLB well. A hearing on the application was held on January 10, 1989. French's application was denied on March 9, 1989.

5. CD No. 148068 is an emergency application by French to revoke DLB Energy's intent to drill.

menced within the time constraints of order No. 283661, and whether it is entitled to priority production of the unit allowable. The DLB well is capable of producing the entire unit allowable. Therefore, if the priority schedule outlined in order No. 283661 is upheld, the French well cannot produce without violating the order.[6] When the DLB well began production, the French well was producing the unit allowable. French did not curtail production when the DLB well went on-line. At the same time, DLB Energy was producing its well as though it was entitled to production priority in the unit. This production scenario would have caused the unit to be in an overproduced status by approximately July 1, 1989, with the possibility that the Corporation Commission would shut-in the drilling unit.

DLB Energy filed an application with the Corporation Commission on April 19, 1989. It asserted that French was ignoring the priority schedule set forth in order No. 283661 by continuing to produce its well at an unrestricted rate. DLB requested that an order issue enforcing Order No. 283661 and finding French in contempt for continued production of its well. The cause was originally heard by a hearing officer on April 24, 1989. Counsel for French appeared at the hearing on the afternoon of the 24th and asserted that the cause should be set over for a trial *de novo* because French had not received notice. The hearing officer found good cause to grant the continuance and the new trial. By agreement of the parties, the cause was reset for May 1, 1989. After taking the evidence, the hearing officer entered a temporary order, pending a ruling in the three related causes, restricting production from the two wells operated by DLB Energy and French in the Harvey Steffen Unit to 1,300 MCF per day with the combined production from the two wells not to exceed the unit's annual allowable. Both parties appealed the oral report of the hearing officer to the Corporation Commission *en banc*. The cause was argued to the Commission *en banc* on May 10, 1989. By temporary order, the Corporation Commission *en banc* affirmed the hearing officer, and it entered a temporary order pending a ruling in CD Nos. 148555, 148068, and 148369. Order No. 339603 is dated June 22, 1989, with an effective date of May 1, 1989.

BECAUSE THE ORDER APPEALED FROM IS TEMPORARY AND BECAUSE THE ULTIMATE ISSUE— PRIORITY PRODUCTION OF THE UNIT ALLOWABLE—REMAINS BEFORE THE CORPORATION COMMISSION, THE CAUSE IS NOT RIPE FOR REVIEW.

French asserts that although the Corporation Commission order is labeled "temporary," it is a final reviewable order. French argues that the appeal is not premature because the order adjudicates rights and equities between the parties and affects French's right to priority in producing hydrocarbons from the Harvey Steffen Unit. DLB Energy insists that the order is temporary and that judicial intervention will entangle the Court in the administrative process without the benefit of a decision on the central issue—the right to priority production of the unit allowable. We agree.

The ripeness doctrine is a part of judicial policy militating against the decision of ab-

---

The Corporation Commission issued order No. 336522 denying the application for an emergency order. French also filed applications to construe the original increased density order (CD No. 148555) and an application to modify order No. 283661 and to reallocate the unit allowable (CD No. 148554). There is also a District Court action pending between French and DLB Energy.

**6.** Order No. 339603 provides in pertinent part:
"... IT IS THEREFORE ORDERED by the Corporation Commission that, *temporarily,* and pending a ruling in CD Nos. 148555, 148068 and 148369, the DLB Steffen # 2 Well be permitted to produce only 1,300 MCF per day and that the French # 3 Steffen Well be permitted to produce only 1,300 MCF per day and, in any event, the combined production from the Harvey Steffen Unit in Section 20, Township 13 North, Range 9 West, Canadian County, Oklahoma, shall not exceed that unit's annual allowable. This order is temporary and shall expire on December 31, 1989, unless further extended by the Commission ..." (Emphasis supplied.)

stract or hypothetical questions. The conclusion that an issue is not ripe for adjudication emphasizes a prospective examination of the controversy indicating that future events may affect its structure in ways that determine its present justiciability. Subsequent events may sharpen the controversy or remove the need for decision of at least some aspects of the matter.[7] The basic rationale of the ripeness doctrine is twofold: 1) to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies; and 2) to protect agencies from judicial interference until their administrative decisions have been formalized and their effects felt in a concrete way by the parties.[8] The factors to be considered in any ripeness analysis are the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration.[9]

We applied the ripeness factors in *H & L Operating Co. v. Marlin Oil Corp.*, 737 P.2d 565, 567–68 (Okla.1987).[10] In *H & L,* the drilling company sought an emergency application to drill an off-pattern well. The application was granted. After the well had been drilled to a depth of 2,260 feet, an application was filed to stay the emergency order. The stay was granted. *H & L* appealed from a Corporation Commission order refusing to vacate the stay. We recognized in *H & L* that the goal of the cause was to determine whether permission should be granted to drill an off-pattern well. However, the issue presented in the cause focused upon the propriety of staying an emergency order once issued, not upon the final issue of well location. Because the issue of well location was still to be determined by the Corporation Commission, the Court found that no substantial controversy of an immediate nature was presented. Rendering a decision in *H & L* would have immersed the Court in the agency process by determining a preliminary issue while leaving the Corporation Commission in the same position it found itself before the opinion issued. The Corporation Commission would still be faced with the issue of location of the off-pattern well.

The hardship issue in *H & L* was also found to be inferior as a real consideration for determining that the appeal was ripe for decision. Physical and contractual restraints and the loss of capital investment already expended in commencing the well were not adequate to show a real hardship. The Court noted that the drilling company risked the same losses if the permanent order did not support drilling at the location provided in the emergency order. The possibility of trading one hardship for another, depending on uncertain future events that the appeal could not resolve, did not justify intervention.

Here, we find ourselves in the same uneasy position we occupied in *H & L.* The issue that will finally determine the rights of the parties is not before the Court— whether the well operated by DLB Energy or the well operated by French is entitled to priority in the production of the unit allowable. This precise issue is before the Corporation Commission. It was presented when French filed an application to construe order No. 238661 and an application to modify the order and redetermine the

---

7. L. Tribe, *Amercian Constitutional Law,* Ch. 3, § 3–10, pp. 77–78 (2nd Ed. Foundation Press, Inc. 1988).

8. *Abbott Laboratories v. Gardner,* 387 U.S. 136, 148, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681, 691 (1967); *Western Okla Chapter v. Corporation Comm'n,* 616 P.2d 1143, 1148 (Okla.1980).

9. *Abbott Laboratories v. Gardner,* see note 8, supra; *H & L Operating Co. v. Marlin Oil Corp.,* 737 P.2d 565, 568 (Okla.1987).

10. Although not characterized as a "ripeness problem," this Court refused to interfere with a temporary order of the Corporation Commission in *Lone Star Gas Co. v. Corporation Comm'n,* 170 Okla. 292, 39 P.2d 547, 555 (1934). The temporary order in *Lone Star* fixed gas rates pending receipt of evidentiary materials which would allow the Corporation Commission to set permanent rates. Our refusal to intervene was premised on the fact that although an incorrect rule of law may have been applied in fixing the temporary rates, the matter could be adjusted when the final order issued.

allowable.[11] A decision in the instant cause would leave the Corporation Commission to determine which party is entitled to priority production of the unit allowable. Interference at this juncture would immerse the Court in the administrative process without expediting a final administrative decision.

The argument proffered on the hardship issue is also similar to the one presented in *H & L.* French asserts that failure to vacate the Corporation Commission's temporary order will result in a portion of French's allowable being produced by DLB Energy. The party entitled to production of the unit allowable must be determined in a hearing on the merits. It is not before this tribunal. Additionally, all the temporary order of the Corporation Commission accomplished was to delay the date upon which the unit would be shut-in. Before the temporary order issued, both French and DLB were producing their wells at unrestricted rates. The temporary order simply put a cap on what each party could produce. If the temporary order were vacated, the parties presumably could resume unrestricted production from the unit. A determination here would result in one hardship—the possibility of a premature shut-in of the unit—being traded for another—the possibility that DLB may be producing hydrocarbons which French is entitled to produce.

This issues presented by the temporary order are not fit presently for judicial decision. Neither is the hardship which may be experienced by the parties of the character that would justify intervention at the appellate level. Therefore, we find that because

the order is temporary, and because a final determination of the central issue—whether the well operated by DLB Energy or the well operated by French is entitled to priority in the production of the unit allowable—is still before the Corporation Commission, the issues tendered are not ripe for review, and the appeal should be dismissed.

## CONCLUSION

The Corporation Commission may issue temporary orders.[12] Temporary orders may also be rescinded at any time.[13] Intercession at this point would involve this Court in the administrative process and ongoing decision making without the chance that a resolution here would affect the outcome of the underlying controversy. The issues tendered are not ripe for review.

APPEAL DISMISSED.

HODGES, V.C.J., and LAVENDER, DOOLIN, HARGRAVE, ALMA WILSON and SUMMERS, JJ., concur.

OPALA, C.J., and SIMMS, J., concur in result.

OPALA, Chief Justice, with whom SIMMS, Justice, joins, concurring in result.

Today the court dismisses this appeal because the issues are not *ripe* for consideration. While I agree that the appeal cannot proceed, I would dismiss it not for want of ripeness but because the order tendered for review is *interlocutory and not appealable.*[1]

---

11. These applications were filed more than two months before the application in the instant cause. The record does not reflect any decision in the two causes.

12. *Lone Star Gas Co. v. Corporation Comm'n,* see note 10 at 550, supra.

13. *Western Okla. Chapter v. Corporation Comm'n,* see note 8 at 1147, supra.

1. See Art. 9, § 20, Okl. Const., *infra;* 52 O.S. 1981 § 113, *infra;* Rule 1.86(a), Rules of Appellate Procedure in Civil Cases, 12 O.S.1981, Ch. 15, App. 2, *infra; Public Serv. Co. of Okl. v. Okl. Corp. Com'n,* Okl., 688 P.2d 1274, 1276 (1984); *Crews v. Shell Oil Company,* Okl., 406 P.2d 482, 486 (1965).

The pertinent terms of Art. 9, § 20, Okl. Const., provide:

"* * *

"The Supreme Court's review of *appealable orders* of the Corporation Commission shall be judicial only, and in all appeals involving ... [an] asserted violation of any [constitutional] right of the parties ... the Court shall exercise its own independent judgment as to both the law and the facts. In all other appeals from orders of the Corporation Commission the review by the Supreme Court shall not extend further than to determine whether the Commission has regularly pursued its authority, and whether the findings and conclusions of the Commission are sustained by the law and substantial evidence. * * *

The appellant, French Petroleum Corporation (French), seeks corrective relief from an order of the Corporation Commission (Commission or agency) that limits the amount of gas which may be produced by two wells of a single unit—one operated by French, and the other by DLB Energy Corp. (an appellee). The order was made *pending* the agency's decision on which (of two wells) shall have "priority in the production of the unit allowable." The decision now before this court expressly provides it is *temporary* "and shall expire on December 31, 1989, unless further extended by the Commission." *The critical and dispositive issue of priority remains unresolved before agency.*

The court holds that the appeal is dismissible because the decision under review cannot pass muster when tested by the ripeness doctrine. *I would dismiss the case for want of an appealable order. The ripeness doctrine would be applicable to this proceeding if the litigants had done all that they were required to do by the agency procedures and were awaiting the Commission's final decision.* This is not the case here. We are today confront-

ed with an appeal from an *adjudicative order*—a context in which the ripeness doctrine is *not* typically applicable.[2] Ripeness principles are intended to preclude premature judicial review of agency *policymaking.* The exercise of that function is primarily reflected in agency rules and regulations, not in its adjudicative orders.

In the leading U.S. Supreme Court case on ripeness, *Abbott Laboratories v. Gardner*,[3] the question was whether the validity of certain administrative regulations was ripe for review. The Court considered "both the fitness of the issues for judicial decision and the hardship to the parties ... [from] withholding court consideration."[4] The ripeness doctrine's "basic rationale is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties."[5]

Here, the appeal was brought from a temporary order whose interlocutory char-

---

"* * *" (Emphasis added.)
The pertinent terms of 52 O.S.1981 § 113 provide:
"* * *
"All appeals under the provisions of this act [the Oklahoma Oil and Gas Conservation Act] must be taken by filing in the Supreme Court a petition in error within thirty (30) days from the date on which the *order, rule, regulation, judgment, decree or final action* of the Commission appealed from shall have been made, rendered or taken by the Commission. * * *" (Emphasis added.)
The pertinent terms of Rule 1.86(a), Rules of Appellate Procedure in Civil Cases, 12 O.S.1981, Ch. 15, App. 2, are:
"Any party desiring to procure review of a decision of the Corporation Commission rendered in the exercise of its regulatory powers under the Oil and Gas Conservation Act may commence an appeal therefrom in compliance with the rules in Part III and III(a) by filing a petition in error within thirty (30) days of the date the decision sought to be reviewed is rendered...."

2. See Jaffe, Judicial Control of Administrative Action at 396–397 (1965), where the author explains:
"One must also distinguish cases which involve *orders which are as 'mature' as they are*

ever going to be; in that circumstance the issue is whether the action is reviewable at all. * * *
"The development and expression of ripeness concepts has become to some extent entangled with the definition of a 'reviewable order.' A statute may provide in particular situations for review of an 'order' or a 'final order'; *such review is to be had in a named court pursuant to a specified procedure.*" (Emphasis added.)
See also 2 Koch, Administrative Law and Practice § 10.33 at 195 (1985), where it is noted that:
"[g]enerally, judicial review of formal agency *adjudication* is a simple, straightforward matter that does not require extended discussion. *The lack of cases in this area is testimony that the problem of ripeness is virtually non-existent.*
"Judicial review of formal adjudication *is very similar to appellate review of lower court proceedings.* * * *" (Emphasis added.)

3. 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967).

4. *Abbott Laboratories v. Gardner, supra* note 3, 387 U.S. at 148, 87 S.Ct. at 1515.

5. *Abbott Laboratories v. Gardner, supra* note 3, 387 U.S. at 148, 87 S.Ct. at 1515.

acter is clearly apparent from the face of the record. No threat of real interruption in the flow of administrative process is posed. The decision has already been made. *It simply is not one that terminates the proceeding.* In contrast to *Abbott,* where the Court treated the *regulation there in contest* as the *final agency action* and held its correctness was ripe for review, there is here *no final* regulatory action and hence *no genuine* call for our assessment of the potential effects judicial interference may have upon policymaking.[6]

"The key to [withholding judicial action on the basis of] ripeness law is now a weighing of the private party's hardship against possible harm to the judicial function from providing relief."[7] Hence, *"[t]he basic proposition that administrative action which creates a dilemma for a private party who must choose between disadvantageous compliance and risking serious penalties is ripe for challenge responds to the heart of the usual problem of ripeness."*[8] (Emphasis in original.)

*This court is not confronted here with the usual situation where ripeness is lacking.*[9] Nor does the appellant seek here corrective relief from coerced compliance under the threat of serious and immediate penalty. *What is before us is simply a request for review of an unappealable order.*[10]

If the Commission-set interval between the temporary order (or its agency extension) and the Commission's disposition of the priority-in-production issue does work to a party's prejudice because an earlier hearing is essential to preserve the rights in contest, the remedy to be invoked—and indeed the only avenue for relief—is an original proceeding in this court for a writ of mandamus to direct that the Commission carry the instant controversy to final conclusion.[11]

## SUMMARY

The order sought to be reviewed lacks the attributes of finality required for a

---

6. In *Western Okl. Chapter, Etc. v. State, etc.,* Okl., 616 P.2d 1143, 1148 (1980), where in the absence of a formal decision upon a proposed rule change the court invoked the ripeness doctrine and declined to review the dismissal of an agency-generated proceeding for rules assessment. In *H & L Operating Co. v. Marlin Oil Corp.,* Okl., 737 P.2d 565, 568 (1987), the ripeness doctrine was applied to an interlocutory decision that suspended the effectiveness of an emergency order. The controversy tendered there was characterized as *"part and parcel of an uncompleted administrative inquiry"*—an attempt at judicial review *before the agency had shaped its response to the problem at hand.*

7. 4 Davis, Administrative Law Treatise at 411 (2nd ed. 1983).

8. Davis, *supra* note 7 at 369.

9. "The ripeness determination ... focuses more upon the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration *than on the finality of the agency decision.* Thus, *an agency decision or order might be final but not yet ripe because it has not come to be felt in a concrete way by a party adversely affected."* (Emphasis added.) Martin and Kramer, Jurisdiction of Commission and Court: The Public Right/Private Right Distinction in Oklahoma Law, 25 Tulsa L.J. 535, 540 (Spr.1990).

10. *The ripeness doctrine is not to be confused with* standing, *reviewability* and exhaustion. As

Davis explains in his Administrative Law Treatise, *supra* note 7 at 350:

"Ripeness law tends to overlap with a good deal of contiguous law, including standing, reviewability, [and] exhaustion.... In many cases the two problems of standing and ripeness are merged; a party may lack standing because what has happened to him is not far enough developed, but the lack of development may be the essence of unripeness.... Similarly, *an unripe question can be called an unreviewable question;* no line separates ripeness from unreviewability; the two overlap so that the separation of the two depends on emphasis more than on distinctiveness. Both ripeness and exhaustion deal with timing of judicial review; *the ripeness focus is on the types of functions that courts should perform,* and the exhaustion focus is on the narrow question of *how far a party must pursue an administrative remedy* before going to court; the two often overlap." (Emphasis added.)

11. *Wilson & Co. v. Oklahoma Gas & Electric Co.,* 190 Okl. 528, 126 P.2d 1009, 1014 (1942) ("[m]andamus may lie to compel action on the part of the commission as to matters within the scope of its constitutional authority"); see *Continental Oil Co. v. Allen,* Okl., 640 P.2d 1358, 1359–1360 (1982); *Hermetics Switch, Inc. v. Sales,* Okl., 640 P.2d 963, 966 (1982); *Sheegog v. Incorporated Town of Lindsay,* 127 Okl. 39, 259 P. 551, 552 (1927).

decision's appealability.[12] It is beyond our reviewing cognizance. Its ripeness need not even be assessed. *Dismissal for lack of ripeness should be confined to cases which present unripe issues of agency policymaking rather than be extended, as it is today, to nonappealable adjudicative decisions.*[13] I would hence invoke the legal norms that control appealability of agency rulings [14] and hold that the order tendered for our review in this case lacks the requisite attributes of finality.

**12.** See *Southwestern Bell Telephone Co. v. State,* 187 Okl. 103, 101 P.2d 798, 799 (1940), where the court held that *no appeal lies* from the Corporation Commission's *refusal to consider* an application for a temporary increase in telephone rates *while the agency was conducting its own proceeding to determine the reasonableness of current rates.*

**13.** See Jaffe, *supra* note 2 at 418, where the author comments that:

"[A] statute which provides for review of an 'order' following a stated course of procedure will *preclude the statutory review of the action qua 'order' where the stated administrative process has not been completed or is not a prelude to the action in question.*" (Emphasis added.)

See also the text quoted from Jaffe and Koch, *supra* note 2.

**14.** See the authorities cited *supra* note 1.