ORYX ENERGY COMPANY and Amoco Production Company, Appellants,

v.

BARRETT RESOURCES CORPORATION, and the Corporation Commission of the State of Oklahoma, Appellees.

No. 87053.

Court of Civil Appeals of Oklahoma, Division No. 1.

Nov. 26, 1996.

Rehearing Denied Jan. 7, 1997.

Certiorari Denied April 16, 1997.

---

Guy E. Taylor, Kathy L. Nelson, Oklahoma City, for Appellant, Oryx Energy Corp.

Gordon D. Ryan, Don W. Danz, Oklahoma City, for Appellant, Amoco Production Corp.

Gregory L. Mahaffey, Gary J. Heinen, Oklahoma City, for Appellee, Barrett Resources Corp.

Jana Harris, Rachel Lawrence Mor, Oklahoma City, for Appellee, Oklahoma Corporation Comm.

## OPINION

HANSEN, Presiding Judge:

Appellants, Oryx Energy Company (Oryx) and Amoco Production Company (Amoco) (collectively Appellants),[1] seek review of a Corporation Commission (Commission)[2] order, which, among other things, established a priority production schedule for the gas wells located within a single drilling and spacing unit.

Oryx is the operator of the Allen drilling and spacing unit comprised of section 20–15N–13W, Blaine County, Oklahoma. Four wells have been drilled in the unit. The No. 1 well was plugged and abandoned. The No.

---

**1.** Because Amoco adopted Oryx's Brief in Chief they will be treated as conjoint appellants.

**2.** Commission filed an appellate response, but subsequently filed a Notice of Nonparticipation stating it intended to take no position in this matter.

2 well was completed in the Morrow common source of supply in 1977. In September, 1994, the No. 3 well was drilled to the Morrow common source of supply pursuant to Commission's increased density Order No. 380102. That order provided that the No. 3 well share a single unit gas production allowable with the No. 2 well.

The No. 4 well was drilled to the Morrow common source of supply pursuant to Commission's increased density Order No. 388840, dated December 19, 1994, and began production in May, 1995. Order No. 388840 provided the No. 4 well was to share a single unit allowable with the No. 2 well. Order No. 388840 did not, however, vacate or modify Order No. 380102, which had provided the No. 3 well was to share a single allowable with No. 2, nor did it even mention well No. 3.

On February 28, 1995, Oryx made application to Commission to modify and amend Order No. 388840 to provide that the No. 4 increased density well should share an allowable with both the No. 2 and No. 3 wells. In support of its application, Oryx alleged that omission of the No. 3 well from the order was "due to an inadvertent error in the testimony".

Appellee, Barrett Resources Corporation (Barrett), a working interest owner in the No. 3 well, but with no ownership in the No. 2 or No. 4 wells,[3] filed a Response and Request for Affirmative Relief to Oryx's application to modify and amend Order No. 388840. Barrett adopted Oryx's application, but additionally requested as affirmative relief that the order to be issued provide "that the existing Allen No. 1, 2, and 3 wells be entitled to produce all of the unit allowable that they are capable of producing, with the increased density well [No. 4] authorized by Order No. 388840 entitled to produce the remainder".

After a hearing at which considerable testimony was taken, Commission's administrative law judge (ALJ) recommended that Oryx's application to modify and amend be granted "consistent with applicant's recommendation of a ratable share of the allowable as defined by Rule 165:10-13-9".[4] Barrett appealed the ALJ's report to Commission, and the appeal was heard by an Oil & Gas Appellate Referee. Barrett argued the administrative law judge improperly construed and applied Rule 165:10-13-9 in recommending ratable sharing of the allowable, and further argued the ALJ's conclusion—that ratable sharing would protect correlative rights throughout the entire unit—was contrary to the undisputed evidence.

By its Order No. 399085, Commission adopted the Oil & Gas Appellate Referee's recommendations that the ALJ's report be reversed and that Barrett's request for affirmative relief in the form of priority sharing of the allowable be granted. Appellants bring their appeals from that order. Commission's order will be affirmed if it is supported by substantial evidence and the law. *Forest Oil Corporation v. Corporation Commission of Oklahoma*, 807 P.2d 774 (Okla. 1990).

Appellants first contend Barrett's request for affirmative relief was an impermissible collateral attack on a prior commission order. They argue Barrett did not appeal from Order No. 388840, which authorized well No. 4, and that the order became the final determination of the parties' rights. Appellants assert that among those vested rights was the right to ratably share the unit allowable pursuant to Rule 165:10-13-9(d), and that to modify the order to provide for a priority production schedule was an impermissible collateral attack on the original order.

Collateral attacks on Commission's orders, rules and regulations are prohibited by 52 O.S. 1991 § 111. Section 111 further provides "the sole method of reviewing such orders and inquiring into and determining

---

**3.** The identical working interest in wells No. 2 and No. 4 are as follows:

| | |
|---|---|
| Oryx | 57.14290% |
| Amoco | 14.28570% |
| Indian Oil Co. | 14.28570% |
| PDI, Inc. | 14.28570% |

Well No. 3 working interests are:

| | |
|---|---|
| Oryx | 57.14290% |
| Amoco | 14.28570% |
| Barrett | 28.57140% |

**4.** Rule 165:10-13-9 is located in the Oklahoma Administrative Code.

their validity, justness, reasonableness or correctness shall be by appeal from such orders, rules or regulations to the Supreme Court". Commission's orders are not, however, made immutable by § 111. Our statutes and common law recognize the orders are subject to change by Commission when certain prerequisites are met.

The Oil and Gas Conservation Act[5] itself provides, in 52 O.S. 1991 § 112, that "[a]ny person affected by any legislative or administrative order of the Commission shall have the right at any time to apply to the Commission to repeal, amend, modify, or supplement the same". In balancing the statutory dictates of §§ 111 and 112, the Oklahoma Supreme Court has determined that "an application for an order of modification constitutes a collateral attack on the prior order where that modification is not based upon substantial evidence showing a change of conditions or knowledge of conditions arising since the last order". *Union Texas Petroleum v. Corporation Commission,* 651 P.2d 652 (Okla. 1981).

Commission grounded its order on such a change of conditions or change in knowledge of conditions. In Order No. 399085, which is the subject of this appeal, Commission found:

> The increased density order which allowed the drilling of the No. 4 well, was granted in part on the belief that the proposed well would have a limited drainage area and would be incapable of adversely affecting ... any existing wells in the unit. However, these conditions have changed as it is now known the No. 4 well can adversely affect the No. 2 and No. 3 wells and the change of conditions that has occurred favors the Commission leaning towards establishing a sharing of the allowable to protect the Allen No. 3 well which is in a more competitive portion of the reservoir and offset by more prolific offsetting wells which are closer to the No. 3 well than the offsets are to the No. 4 well.

■ We find there is substantial evidence of record to support Commission's finding. Substantial evidence has been defined as "something more than a scintilla; possessing something of substance and of relevant consequence carrying with it a fitness to induce conviction, but remains such that reasonable men may fairly differ on the point of establishing the case". *Union Texas Petroleum v. Corporation Commission,* 651 P.2d at 662.

Commission's Order No. 388840, authorizing well No. 4, reflects Commission found "the testimony also established that the proposed well would not adversely affect any of the existing wells currently producing from this Morrow Sand common source of supply underlying this section". During the hearing on Oryx's application to amend and modify Order No. 388840, which was after well No. 4 had begun production, Oryx's expert engineering witness acknowledged wells No. 3 and No. 4 were, to a certain extent, competing in the same reservoir.

Additionally, new well pressure data for the No. 3 well and its offset wells, as shown in exhibits admitted at the hearing, reflected the No. 3 well was in a very competitive reservoir with potential of severe drainage from the offsetting wells. Barrett's expert engineering witness testified as to the production data and the fact that the No. 3 well was in a more competitive situation than the No. 4 well. Oryx's expert witness also acknowledged that in July, 1995, at the time of the hearing, the wells offsetting the No. 3 well were producing 3 to 4 times more than the wells offsetting No. 4. This evidence meets the test of substantiality and was not available at the time Commission considered and issued Order No. 388840.

■ Even if Barrett could have made an argument for a priority schedule for the allowable, but failed to, during the time Commission was initially considering the application for the No. 4 well, we are unpersuaded it was precluded from doing so subsequent to the order when it showed a change of conditions justifying the priority schedule. Section 112 allows an application to repeal, amend, modify or supplement a Commission order *at any time.* Barrett would have, however, been precluded here if it had based its application on evidence of conditions which could have been brought forward at

---

5. 52 O.S. 1991 §§ 81 *et seq.*

the time of the initial consideration. *Union Texas Petroleum v. Corporation Commission,* 651 P.2d at 659.

■ Appellants also contend Barrett's application for affirmative relief was an attempt to improperly "readjudicate the manner in which production was to be allocated". We do not agree. The manner in which production was to be allocated was never actually adjudicated. Order No. 388840 provided only that if well No. 4 was completed as a gas well from the Morrow Sand separate common source of supply, "it shall share a single unit gas allowable with the existing No. 2 well now located in the northwest quarter of the unit". Commission did not dictate how that single unit gas allowable was to be allocated.

We further do not find Commission has dictated by its rules how the unit gas allowable is to be allocated in this case. It appears Appellants argue that Commission somehow implicitly adjudicated the method of allocation by not specifying how the allowable was to be allocated in Order No. 388840, but leaving that determination to Rule 165:10–13–9. Appellants assert Rule 165:10–13–9(d)(1) mandates that the allowable in this case be ratably shared, and that Commission had no authority to order that the allowable be shared on a priority schedule. We find no merit in that assertion.

Rule 165:10–13–9 is entitled *Allowable for Increased Density Well.* The rule provides generally that, "[e]xcept as otherwise provided by rule or order of the Commission", the allowable for permitted wells within a drilling and spacing unit producing from a common source of supply shall be determined as set forth in the rule. Under the rule, wells of the same classification shall share a single well allowable.

Subsection (b) of Rule 165:10–13–9 prescribes how the unit gas allowable is determined. Subsection (c) provides for allowables of additional wells not of the same classification as existing unit wells. Subsection (d), the subsection in controversy is as follows:

(d) **Effect of penalties.** If the allowable for a well in a drilling and spacing unit is subject to a percentage penalty or lid on production, the penalty or lid on production shall apply to the ratable share of production of the shared single allowable for the penalized well as opposed to the entire shared single allowable for the unit.

(1) The ratable share of production of the shared single allowable for an unallocated gas well is that volume of gas which bears the same ratio to the shared single allowable as the wellhead absolute open flow potential for the well bears to the sum of the wellhead absolute open flow potentials for wells in the drilling and spacing unit of the same classification for allowable purposes.

In the order before us for review, Commission, considering 165:10–13–9(d)(1), found:

A proper interpretation of said rule, in accordance with the plain language set forth by the rule, determines that the ratable sharing provision only applies when an allowable for a well within a unit is subject to a percentage penalty or a lid on production.

■ We hold as a matter of law that Commission correctly interpreted its rule. It is clear from reading Rule 165:13–10–9 as a whole that when Commission wanted a provision to apply *generally,* it set forth the provision as a major subsection, as it did with subsections (b) and (c). Subsection (d)(1), on the other hand, is subordinate to subsection (d), and *specifically* defines ratable share of production only for the purpose of prescribing how the penalty or lid on production will be imposed. There is nothing to indicate Commission intended subsection (d)(1) to mandate ratable sharing of production in *all* cases where a single gas allowable is shared. In fact, the expert witnesses for both Oryx and Barrett testified concerning other orders where Commission had directed a priority sharing arrangement. Also see, *French Petroleum Corporation v. Oklahoma Corporation Commission,* 805 P.2d 650 (Okla.1991); *DLB Energy Corporation v. Oklahoma Corporation Commission,* 805 P.2d 657 (Okla. 1991).

Because Commission was not constrained by its rules to only approve ratable sharing of the unit allowable, we do not find Barrett's

request for affirmative relief, in response to Oryx's application to amend or modify, was procedurally improper. While Order No. 388840 did not mention well No. 3, the order affected Barrett's interests because it appeared to be inconsistent with Commission's order approving well No. 3. Barrett joined in Oryx's application to have well No. 3 included in Order No. 388840, but requested the priority schedule when it learned the order did not provide for priority sharing.

Contrary to its assertion, Oryx's application was intended to do more than clarify Commission's order. Clarification would limit Commission's consideration to the record which had been made. In this case, the record was itself deficient in that there had been no testimony to include well No. 3 in the sharing of the single unit allowable. Further testimony was required to support the additional well in the sharing arrangement.

When Barrett's interests in well No. 3 were directly affected by the proposed inclusion of that well in sharing the single unit allowable, Barrett could properly apply to Commission for further modification to direct how the allowable would be allocated. Barrett gave proper notice of its request for affirmative relief. We find Appellants' contention that Barrett did not actually *apply* to Commission to amend or modify Order No. 388840 to put form over substance, and it is without merit.

■ Appellants next contend Order No. 399085 is invalid because the regulatory procedures concerning the Oil and Gas Appellate Referee were promulgated in excess of Commission's statutory authority. Appellants specifically challenge Commission's amendment to Commission Rule 165:5–13–5(d), which now provides that no appeal may be taken from the report of the Oil and Gas Appellate Referee to Commission. Appellants argue that Commission had no authority to impose such a restriction in the absence of a similar restriction in statute. Once again, we find no merit in this argument.

The position of Oil and Gas Appellate Referee was created in 52 O.S.Supp. 1995 § 149.2 to hear exceptions and appeals from

ALJ recommendations. Section 149.2 provides, in relevant part:

The Oil and Gas Appellate Referee shall file a report and make recommendations to the Commission for the disposition of such exceptions and appeals. The Commission shall promulgate such rules as may be necessary to implement this section.

Prior to Commission's amendment of Rule 165:5–13–5(d), a party was allowed to take exception to reports sent to Commission for final determination. Under the present rule it would appear no such exceptions are allowed. However, Appellants fail to direct us to any statutory mandate that would require such exceptions. Section 149.2 clearly does not contain any requirement that an appeal be allowed from the Oil and Gas Appellate Referee's report, or that exceptions in any form be allowed. That section authorizes Commission to implement the statute by rule making, leaving procedural discretion with Commission. Commission's amendment to Rule 165:5–13–5(d) was not in conflict with statutory authority.

■ Appellants appear to implicitly complain of a violation of their due process rights, that is, deprivation of their right to be fully heard before Commission. Fairness against governmental deprivation of an individual's property interests is ensured by procedural safeguards when proper notice and opportunity to be heard are afforded. *Southwestern Bell Telephone Co. v. Oklahoma Corporation Commission*, 873 P.2d 1001 (Okla.1994). The right to be heard here was adequately afforded before both the ALJ and the Oil and Gas Appellate Referee. In the absence of a constitutional breach, we must defer to the Legislature and Commission on the question of agency procedure.

■ Finally, Appellants assert the Oil and Gas Appellate Referee's report was invalid because it contained factual errors. The evidence in question relates to testimony by Oryx's engineering witness, where the witness acknowledged the No. 3 well was offset by very prolific wells and agreed an operator would be more concerned about protecting areas where they have prolific offsets. The Oil and Gas Appellate Referee quoted the

witness in the conclusions supporting his recommendations to Commission.

We find no factual error in the Oil and Gas Appellate Referee's report. The testimony referred to by the Referee is supported by the transcript. In making the recommendations to Commission as mandated by 52 O.S.Supp. 1995 § 149.2, the Referee can properly advise Commission as to what evidence supports those recommendations. Additionally, the testimony and conclusion in controversy were but one of a number of conclusions included in the Referee's report, the report contains a complete exposition of each party's factual position, and the entire record was available to Commission. We are unconvinced Commission was improperly persuaded in its determination by the contested Referee's conclusion.

Appellants' stance in this matter seems to be best summarized by Oryx's statement in its Reply Brief that "it should be the sole provence (sic) and discretion of an operator of a drilling and spacing unit how the wells drilled on that unit are to be produced to best protect it from potential offsetting drainage". We disagree. While the operator of a drilling and spacing unit has authority commensurate with its duty to act prudently, it is well established in this state that Commission has the *ultimate* responsibility and authority to prevent waste of oil and gas and to protect the correlative rights of interested parties. *Pelican Production Corporation v. Wishbone Oil & Gas, Inc.,* 746 P.2d 209 (Okla.App.1987); 52 O.S.Supp. 1995 § 87.1. Commission was properly acting within that authority when it issued the order now under review.

Commission's Order No. 399085 is supported by substantial evidence and is not contrary to law. The order is AFFIRMED.

JOPLIN and BUETTNER, JJ., concur.