2010 OK CIV APP 133

**Mary Lou HUMMER, Plaintiff/Appellant,**

**and**

**Barney Lehmbeck, Trustee of the Oneta Swaim Lehmbeck Living Trust and the Bryon L. Lehmbeck Living Trust; and Anne M. Swaim, Independent Executrix of The Estate of Fred M. Swaim, Plaintiffs,**

**v.**

**STATE of Oklahoma ex rel. OKLAHOMA BOARD OF AGRICULTURE, Oklahoma Department of Agriculture, Food and Forestry; and Land O'Lakes, Inc., Defendant/Appellees.**

No. 107261.

Court of Civil Appeals of Oklahoma, Division No. 1.

July 2, 2010.

Certiorari Denied Nov. 1, 2010.

Susan Randall, Oklahoma City, OK, for Plaintiff/Appellant.

James Woodruff, Department of Agriculture, Oklahoma City, OK, for Defendant/Appellee, Board of Agriculture and Department of Agriculture.

R. Thomas Lay, Kerr, Irvine, Rhodes & Ables, Oklahoma City, OK, for Defendant/Appellee, Land O'Lakes, Inc.

CAROL M. HANSEN, Judge.

¶1 Plaintiff/Appellant, Mary Lou Hummer (Protestant), seeks review of the district court's order affirming the decision of Defendant/Appellee, Oklahoma Board of Agriculture (Board), to grant a license to Defendant/Appellee, Land O'Lakes, Inc. (Applicant), to construct and operate a concentrated swine feeding operation as a swine nursery in Beaver County, Oklahoma, pursuant to the Oklahoma Swine Feeding Operations Act (OSFO Act), 2 O.S.Supp.2007 §§ 20–1 to 20–29. At issue is whether the Board erred in granting the license when Applicant intended to sell the nursery to another operator. We hold the OSFO Act does not prohibit an applicant from seeking a license for a concentrated swine feeding operation when the applicant intends to sell the operation after constructing the facility. We affirm the district court's order, leaving the Board's order in effect.

¶2 Applicant initiated its application for the concentrated swine feeding operation license in 1997 and received a certificate of the application's completeness in 2004 from De-

fendant/Appellee, Oklahoma Department of Agriculture, Food, & Forestry (ODAFF). Applicant gave notice of its application. Protestant and the other plaintiffs sought hearing. An ODAFF administrative law judge (ALJ) conducted a hearing on the application on May 3–12, 2005. The ALJ recommended the application be denied because Applicant did not plan to own, operate, and manage the concentrated swine feeding operation for which it sought a license. The Board rejected the ALJ's recommendation and remanded the matter to the ALJ for consideration of the merits of the application. The ALJ again recommended denial because Applicant did not intend to operate or own the business.

¶ 3 The Board again rejected the ALJ's recommendation. On May 21, 2008, the Board entered its final order granting the license. The order found Applicant had entered into an agreement with Quarter M Farms under which it might convey ownership of the nursery at some future date subject to numerous contract contingencies, terms, conditions, and provisions. It found the potential sale would not occur until after Applicant paid all licensing costs and constructed the nursery in accordance with the ODAFF-approved plans and specifications, and Quarter M Farms obtained approval of its application for license transfer. The order concluded:

> Protestants took exception to the notice provided by the Application, ... asserting that the notice and other materials filed were false and misleading because they indicated that the Applicant Land O'Lakes would be the owner and operator of the proposed facilities when in truth and fact the Applicant previously entered into an agreement pursuant to which the facilities

might be sold to another at some unknown future date. While the Board understands and appreciates Protestants' assertions, the undisputed evidence established that although the agreement alluded to in fact exists and in fact the proposed facilities might be sold by the Applicant to another at some unknown future date after application approval, after issuance of a building permit, after construction of the facilities, after certification of the as-built facilities and after licensure, at all times relevant here (when applications were filed, when notice was given, at hearing on the application and through the current date and beyond), Land O'Lakes is the license applicant, owner of the proposed facilities and may be the future operator of the facilities if the possible future sale in fact never occurs.... Under the evidence presented, the notice provided cannot be found to be false or misleading given the present status of the Applicant and the proposed facilities. Moreover, the claimed omission clearly did not defeat the underlying purpose of the notice which is to provide landowners and the public with notice of the application and opportunity to be heard on the application.

¶ 4 Protestant sought judicial review in the district court of Oklahoma County pursuant to 75 O.S.2001 § 318. The district court affirmed the Board's order. Protestant appeals pursuant to 75 O.S.2001 § 323.

¶ 5 We note both parties filed appendices to their briefs in violation of Okla.Sup.Ct.R. 1.11(i), 12 O.S.2001, Ch. 15, App. 1. Accordingly, the appendices are stricken.

¶ 6 We may not disturb a final agency order except upon one of the grounds listed in 75 O.S.2001 § 322.[1] We may not substi-

---

1. 75 O.S.2001 § 322 provides,

(1) In any proceeding for the review of an agency order, the Supreme Court or the district or superior court, as the case may be, in the exercise of proper judicial discretion or authority, may set aside or modify the order, or reverse it and remand it to the agency for further proceedings, if it determines that the substantial rights of the appellant or petitioner for review have been prejudiced because the agency findings, inferences, conclusions or decisions, are:

(a) in violation of constitutional provisions; or

(b) in excess of the statutory authority or jurisdiction of the agency; or

(c) made upon unlawful procedure; or

(d) affected by other error of law; or

(e) clearly erroneous in view of the reliable, material, probative and substantial competent evidence, as defined in Section 10 of this act, including matters properly noticed by the agency upon examination and consideration of the entire record as submitted; but without otherwise substituting its judgment as to the weight of the

tute our judgment for that of the agency, particularly in the area of expertise which the agency supervises. *City of Hugo v. State ex rel. Public Employees Relations Bd.*, 1994 OK 134, 886 P.2d 485, 490.

## I

■ ¶ 7 As a threshold matter, we must inquire into our jurisdiction. Applicant asserts the district court lacked subject matter jurisdiction to review the agency order because Protestant filed the petition for judicial review more than 30 days after the May 21, 2008 open meeting in which the Board approved the final agency order and at which Protestant personally appeared. Pursuant to 75 O.S.2001 § 318(B)(2), a petition for judicial review must be filed within thirty days after the appellant is notified of the final agency order as provided in § 312. Section 312 provides the order must be in writing and states, "Parties shall be notified either personally or by certified mail, return receipt requested, of any final agency order. Upon request, a copy of the order shall be delivered or mailed forthwith to each party and to his attorney of record."

¶ 8 The final agency order in this case states it was signed and filed on May 21, 2008. Attached to the order is a certificate of mailing stating the "Final Order was mailed, by first class mail, postage prepaid," to Protestant's attorney, among others, but not to Protestant, on June 2, 2008. Protestant filed her petition for judicial review in district court on June 27, 2008. Protestant's personal appearance at the Board's open meeting in which it adopted the order is not sufficient under the statute to trigger the running of the thirty-day time period for appeal. It appears Protestant was never notified of the order as required by § 312. However, even if we treat delivery by first class mail as sufficient to trigger the appeal time, Protestant's petition was timely filed.

Accordingly, the district court properly exercised subject matter jurisdiction.

## II

¶ 9 Protestant's first contention is the trial court erred in upholding the agency's decision because it was not supported by substantial evidence in the record and was arbitrary and capricious. She first argues the approval of the application was contrary to the OSFO Act's intent that the entity applying for the license would be the entity able to construct, operate, and manage the facility. Protestant argues the trial court should have upheld the ALJ's recommendations for denial.

■ ¶ 10 The Oklahoma Administrative Procedures Act provides for judicial review of final agency orders in individual proceedings. 75 O.S.2001 § 318(A)(1). We will review *only* the final agency order and not the actions of the ALJ or other agency staff. The recommendation of the ALJ is entitled to no special weight in determining whether the agency's order is supported by substantial evidence. *Cameron v. Corporation Commission*, 1966 OK 75, 414 P.2d 266, 272. The ALJ's report and recommendations are advisory only and are not binding upon the Board. The Board is required to reach its own conclusions upon the evidence and make adequate findings, and may reject, accept, or add to any or all of the recommendations of the ALJ. *State ex rel. Cartwright v. Oklahoma Natural Gas Co.*, 1982 OK 11, 640 P.2d 1341, 1345–1346.

¶ 11 The OSFO Act states its purpose is "to provide for environmentally responsible construction and expansion of swine feeding operations and to protect the safety, welfare and quality of life of persons who live in the vicinity of a swine feeding operation." 2 O.S.Supp.2007 § 20–2(B). A swine feeding operation is defined as a lot or facility where

---

evidence for that of the agency on question of fact; or
(f) arbitrary or capricious; or
(g) because findings of fact, upon issues essential to the decision were not made although requested.
(2) The reviewing court, also in the exercise of proper judicial discretion or authority, may re-

mand the case to the agency for the taking and consideration of further evidence, if it is deemed essential to a proper disposition of the issue.
(3) The reviewing court shall affirm the order and decision of the agency, if it is found to be valid and the proceedings are free from prejudicial error to the appellant.

swine are stabled, confined and fed, or maintained for at least three months out of the year and where crops are not grown. § 20.3(B)(2). It is considered a concentrated swine feeding operation if the number of animals confined exceeds certain statutory limits and it discharges pollutants into waters of the state. § 20.3(B)(11)(b). A concentrated swine feeding operation must obtain a license to operate. § 20–6(A)(1). The license application must state the name and address of the owner and operator of the facility. § 20–7(B)(1). A license may be transferred upon meeting certain statutory conditions. § 20–7(E). The information required about the operator is the same regardless of whether the application is for a new or transfer license. § 20–7(G).

¶ 12 The OSFO Act does not prohibit an applicant from seeking a license for a concentrated swine feeding operation when the applicant intends to sell the operation after constructing the facility. In requiring a license for each operation rather than for each operator, and in making the license transferable between operators, the OSFO Act focuses on the impact of the operation itself on the neighboring community rather than on the relationship between the operator and the community. The OSFO Act does require the Board to consider the operator's environmental history in determining whether the license should be granted, and the Board must consider the environmental history of any license transferee in determining whether an application to transfer the license should be granted. We find no error in the Board's consideration of Applicant's license application when Applicant intended to sell the nursery to another operator.

¶ 13 Protestant next argues the application should be denied for additional deficiencies, including (1) insufficient land for land application of waste at the time of closure, (2) inaccurate location of setbacks, waste retention structures, and water wells, (3) pollution concerns, and (4) inadequate odor abatement. The record contains conflicting evidence on these fact issues. We will not substitute our judgment as to the weight of the evidence for that of the agency on questions of fact.

¶ 14 Protestant also argues the Board erred in finding property values irrelevant.

In 1998, the Legislature amended the OSFO Act, 2 O.S.Supp.1997 § 9–205.1(C)(4) (now codified at 2 O.S.Supp.2007 § 20–8(C)(4)), to add the following subsection:

b. For applications submitted on and after the effective date of this act, the Department shall deny the issuance of a license to an applicant for a licensed managed feeding operation if an interested party within:

(1) one (1) mile of the designated perimeter of the proposed licensed managed feeding operation or expansion thereof, or (2) the setback distance of an occupied residence as provided in subsection A of Section 16 of this act if such setback distances are greater than one (1) mile, proves that the granting of the license will cause significant harm to the property value of the interested party.

Laws 1998, c. 404, § 7. The application in this case was submitted in 1997, prior to the effective date of this amendment. The Board did not err in declining to apply the amended statute to this case.

III

¶ 15 Protestant's next contention is her right to due process was violated because the notice sent to affected property owners and the public did not provide a meaningful opportunity for the property owners to review the application. She argues the notice was defective because it did not give accurate information as to who would own, operate, and manage the proposed facility.

¶ 16 "Minimum standards of due process require administrative proceedings that may directly and adversely affect legally protected interests be preceded by notice calculated to provide knowledge of the exercise of adjudicative power and an opportunity to be heard." *DuLaney v. Oklahoma State Dept. of Health,* 1993 OK 113, 868 P.2d 676, 684–685. In this case, the administrative proceeding was the determination of Applicant's application for a license to operate a concentrated swine feeding operation. The notice given to affected property owners provided Protestant knowledge of Applicant's application and the opportunity to be heard. The only action the Board could take on the application would be to grant or deny the license to Applicant. The Board could not

issue the license to someone other than Applicant based on the application before it. Therefore, the notice gave accurate information as to who would be licensed to own, operate, and manage the proposed facility. Protestant's right to due process was not violated by the notice given.

## IV

¶ 17 Protestant's last contention is the transfer process authorized by 12 O.S.Supp. 2007 § 20–7(E) is unconstitutional because it does not give notice and an opportunity for affected property owners to address issues regarding the transferee of a concentrated swine feeding operation license. The present appeal is not from a Board decision granting or denying an application to transfer a license. Therefore, the issue of the constitutionality of the transfer procedure is hypothetical only and is not ripe for review. *See French Petroleum Corp. v. Oklahoma Corp. Com'n,* 1991 OK 1, 805 P.2d 650, 652–653.

¶ 18 For the foregoing reasons, we affirm the district court's order, leaving the Board's order in effect.

¶ 19 AFFIRMED.

BUETTNER, P.J., and HETHERINGTON, J., concur.